[No. G041771. Fourth Dist., Div. Three. May 26, 2010.]

LAUREN ADOLPH, Plaintiff and Respondent, v.
COASTAL AUTO SALES, INC., Defendant and Appellant.

1444

**COUNSEL**

Venable, Arent Fox, Aaron H. Jacoby, John D. Bronstein and Melanie S. Joo for Defendant and Appellant.

Law Offices of Ronald B. Schwartz, Ronald B. Schwartz and Mark J. Spencer for Plaintiff and Respondent.

## OPINION

**IKOLA, J.**—Defendant Coastal Auto Sales, Inc., doing business as Norm Reeves Honda Superstore, appeals the court's denial of its petition to compel arbitration.[1] We affirm. The court's factual finding that defendant waived its right to arbitrate is supported by substantial evidence. A defendant may not use court proceedings for its own purposes, while remaining uncooperative with a plaintiff's efforts to use those same court proceedings, and then, upon failing to achieve defendant's own objectives in court, and at the time when the parties should be engaged in final trial preparation, demand arbitration for the first time.

## FACTUAL AND PROCEDURAL SUMMARY

Plaintiff Lauren Adolph bought a 2003 Honda Civic from defendant and traded in her 1998 Ford Escort toward the downpayment. Plaintiff later sued defendant for failing to transfer ownership of the Escort to itself, causing plaintiff to be charged with parking fines, towing and impound fees, and a tax garnishment related to the Escort she no longer owned. On the day before plaintiff filed her original complaint, she served by certified mail a notice of violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.),[2] as required by section 1782, subdivision (a). More than 30 days thereafter, on July 11, 2008, plaintiff filed and served her first amended complaint (FAC). The court sustained with leave to amend defendant's demurrer to plaintiff's FAC. Plaintiff filed a second amended complaint (SAC) that referenced (for the first time) that the Escort had been traded in as part of the downpayment on her purchase of the Civic. Defendant's demurrer to the SAC was overruled. Defendant then sought arbitration. The court denied defendant's petition to compel arbitration of the controversy, finding defendant waived its right to arbitrate.

On appeal defendant argues its arbitration right was triggered by the SAC's reference to the purchase agreement for the Civic; defendant asserts it moved for arbitration at its very first opportunity.[3] To assess this claim, we summarize plaintiff's allegations in her FAC and her SAC, and describe the discovery efforts undertaken before the court overruled defendant's demurrer to the SAC.

---

[1] The court's order is appealable under Code of Civil Procedure section 1294, subdivision (a).

[2] All statutory references are to the Civil Code unless otherwise stated.

[3] Contrary to defendant's argument, the SAC did not refer to the purchase agreement for the Civic, nor was a copy attached to the pleading, although the SAC did allege that the failed transfer of the Escort was part of the purchase transaction for the Civic.

*The FAC*

In her FAC, plaintiff alleged she "purchased services" from defendant by transferring a 1998 Ford Escort to defendant pursuant to a bill of sale. Defendant agreed to transfer to itself ownership of the Escort and to "take care of all DMV ownership transfer requirements," including "submitting a Notice of Release of Liability to the DMV." Thereafter, on at least seven occasions over a period of three years, plaintiff notified defendant's agents of parking tickets she had received for the Escort after the date of sale, as well as a letter demanding towing and junkyard impound fees, and a tax offset notice threatening garnishment for "monies owed on the 1998 Ford Escort for the outstanding traffic ticket" defendant had promised to take care of. Defendant's agents "admitted it was defendant's fault" and promised to take care of the matter. But as of the date of the FAC, the Escort remained "registered in plaintiff's name."

The FAC contained four causes of action, including a claim under the CLRA. Plaintiff alleged, inter alia, that defendant engaged in an "unfair or deceptive act or practice under" the CLRA by violating section 1770, subdivision (a)(16) (section 1770(a)(16)). Under that subdivision, a "person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer" engages in an "unfair or deceptive" act or practice by "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." In the FAC, plaintiff alleged that the "subject of [the] transaction [was the] transfer of ownership of the 1998 Ford Escort from plaintiff to defendant, including filing the necessary documents with the DMV to release plaintiff from liability for the car."

*Demurrer to the FAC*

In August 2008, defendant demurred to the FAC, inter alia, for failure to state a cause of action under section 1770(a)(16), which prohibits a seller from representing "that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Defendant argued that "the subject of the transaction is the subject vehicle," not the "transfer of ownership." The court sustained with leave to amend defendant's demurrer to plaintiff's CLRA cause of action.

*The SAC*

Plaintiff filed her SAC on October 6, 2008. As relevant here, the SAC was substantially similar to the FAC, but contained changes to paragraph 5 of the general allegations and paragraphs 19 and 20 of the CLRA claim. In

paragraph 5 of the SAC plaintiff alleged she "purchased a 2003 Honda Civic Automobile" from defendant, and that, as "part of that purchase transaction, defendant agreed to take in plaintiff's . . . Escort . . . and apply its value as a down payment toward the purchase of the 2003 Honda Civic." (In contrast, in par. 5 of the FAC plaintiff alleged she "purchased services from" defendant.) In paragraph 19 of the SAC plaintiff alleged that, under section 1770(a)(16), the subject of the transaction was "effecting transfer of ownership of the 1998 Ford Escort from plaintiff to defendant, including obtaining a release of plaintiff from liability for the car, as performance pursuant to the purchase agreement for the 2003 Honda Civic." And in paragraph 20 of the SAC plaintiff alleged that defendant's misrepresentations "in the performance of its agreement were intended to result in the sale of the 2003 Honda Civic to plaintiff." (In contrast, in par. 20 of the FAC plaintiff alleged that defendant's misrepresentations "in the performance of its agreement were intended to result in the sale of the service to plaintiff.") Thus, the consumer transaction described in the SAC was defendant's sale of a Civic to plaintiff pursuant to a purchase agreement. The performance of that purchase agreement allegedly included defendant's transferring the Escort to itself.

*Demurrer to the SAC*

On November 7, 2008, defendant demurred to the SAC for failure to state a cause of action under the CLRA. On December 5, 2008, the court overruled defendant's demurrer.

*Discovery*

In August and September of 2008, plaintiff propounded written discovery requests on defendant and noticed depositions of defendant's personnel. Defendant stalled the depositions. Plaintiff served her first deposition notices on August 15. Defendant's counsel responded with a letter on August 28, stating that "witnesses and defense counsel were unavailable" on the dates noticed. Instead of proposing dates on which the witnesses and counsel *would* be available, defendant's counsel simply stated: " '[C]onsequently, alternative dates will be proposed . . . as soon as those dates have been ascertained.' " Defendant's counsel did *not* object to the depositions on the ground that arbitration would be sought. Apparently, alternative deposition dates were never provided, despite plaintiff's counsel asking for them at court appearances on September 26, October 16, and December 5, 2008, and defendant's counsel saying she would provide them.

Written discovery did not go much better. On August 20, 2008, plaintiff served a set of form interrogatories, requests for admissions, and a demand for production of documents. After obtaining an extension, defendant responded to the written discovery on October 1, 2008, but the responses resulted in plaintiff's counsel finding it necessary to write two meet and confer letters regarding asserted insufficiency of the responses.

*Defendant's Request for, and Petition to Compel, Arbitration*

On the same day the court overruled defendant's demurrer to the SAC, i.e., December 5, 2008, and after the hearing, defendant wrote plaintiff asking for a stipulation to arbitrate the matter, enclosing *for the first time* the contract containing the arbitration clause, a contract which had been withheld from the earlier document production. On January 7, 2009, plaintiff declined defendant's request to arbitrate the dispute. On January 28, 2009, defendant filed its petition to compel arbitration of all claims in plaintiff's SAC and to stay plaintiff's lawsuit.

The court denied defendant's petition, finding defendant waived its right to arbitrate.[4] The court's reasoning is set forth at length in the discussion section below.

## DISCUSSION

Defendant contends it did not delay in seeking arbitration because the dispute became arbitrable only when plaintiff filed her SAC, predicating her CLRA claim on the Civic purchase contract. Further, defendant asserts plaintiff was not prejudiced by any delay because all "discovery was generated solely by" plaintiff and related "only to the causes of action in the FAC."

Plaintiff counters that defendant "knew of its right to arbitrate since the inception of the litigation . . . ." Plaintiff asserts the court found (1) defendant "did not move to compel arbitration at its 'very first opportunity' but, rather, delayed six months intending to pursue the court action," and (2) plaintiff was prejudiced because defendant's "conduct substantially undermined [her] ability to take advantage of the benefits and cost savings provided by arbitration two months before trial."

We apply the substantial evidence standard of review to the court's finding defendant waived its right to arbitrate. (*Guess?, Inc. v. Superior Court* (2000)

---

[4] The court acknowledged that plaintiff "offered numerous grounds for denying defendant's motion to compel arbitration." In her respondent's brief, plaintiff mentions those other grounds (including that the arbitration clause is unconscionable and void for constructive fraud), but she offers no further discussion or legal argument on the subject.

79 Cal.App.4th 553, 557 [94 Cal.Rptr.2d 201].) The court's determination of this factual issue, " 'if supported by substantial evidence, is binding on an appellate court.' " (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 605 [183 Cal.Rptr. 360, 645 P.2d 1192] (*Keating*), overruled on another ground in *Southland Corp. v. Keating* (1984) 465 U.S. 1, 16 [79 L.Ed.2d 1, 104 S.Ct. 852].) Only " 'in cases where the record before the trial court establishes a lack of waiver as a matter of law, [may] the appellate court . . . reverse a finding of waiver made by the trial court.' " (*Keating*, at p. 605.)

██ The law on waiver of the right to arbitration is "well defined." (*Keating, supra,* 31 Cal.3d at p. 604.) Because "[a]rbitration is strongly favored," courts must "closely scrutinize any claims of waiver." (*Ibid.*) A "party seeking to establish waiver" bears a heavy burden of proof. (*Id.* at p. 605.) "[T]here is no 'single test' in establishing waiver . . . ." (*Ibid.*) "[T]he relevant factors include whether the party seeking arbitration (1) has 'previously taken steps inconsistent with an intent to invoke arbitration,' (2) 'has unreasonably delayed' in seeking arbitration, (3) or has acted in 'bad faith' or with 'willful misconduct.' " (*Ibid.*)

Our Supreme Court has more recently expanded its summary of the "factors [that] are relevant and properly considered in assessing waiver claims." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [8 Cal.Rptr.3d 517, 82 P.3d 727] (*St. Agnes*).) " 'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*Ibid.*)

██ "Waiver does not occur by mere participation in litigation . . . ." (*Keating, supra,* 31 Cal.3d at p. 605.) " '[A]s an abstract exercise in logic it may appear that it is inconsistent for a party to participate in a lawsuit for breach of a contract, and later to ask the court to stay that litigation pending arbitration. Yet the law is clear that such participation, standing alone, does not constitute a waiver [citations], for there is an overriding federal policy favoring arbitration . . . . [M]ere delay in seeking a stay of the proceedings without some resultant prejudice to a party [citation], cannot carry the day.' " (*Id.* at pp. 605–606.)

 "California's arbitration statutes reflect ' "a strong public policy in favor of arbitration as a *speedy and relatively inexpensive means of dispute resolution.*" ' " (*St. Agnes, supra*, 31 Cal.4th at p. 1204, italics added.) Accordingly, "[p]rejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration. [¶] For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence . . . ." (*Ibid.*)

Here, the trial court's findings well capture our own view of the evidence. We quote the court's findings in full:

"[I]t is apparent to the court that defendant's conduct has been inconsistent with an intent to arbitrate. Related to this is the 6 months of delay from the filing of Plaintiff's complaint to the instant petition to compel. In that time period defendant filed two demurrers, accepted and contested discovery request[s], engaged in efforts to schedule discovery, omitted to mark or assert arbitration in its case management statement.

"The effect of these inconsistent actions by defendant has resulted in more than merely participating in litigation or expending legal cost[s] but in prejudice to the plaintiff by substantially undermining plaintiff's ability at this late date to take advantage of the benefits and cost savings provided by arbitration. It is clear to the court that defendants intended by their conduct to proceed with their court action. It was only until defendant's second demurrer was overruled that it now request[s] this court that it litigate now in another forum to which all appearances it hopes that it will limit its litigation risk and expense. It will also increase plaintiff's expenses and burdens, having already required plaintiff to expend its efforts and resources in vigorously litigating this case in court. To allow defendant at this time with a trial set for May when it has known of its right to arbitrate this matter since June 2008[5] yet

---

[5] Plaintiff filed her original complaint on June 6, 2008, but defendant asserts it was never served with the original complaint and never filed an answer. Plaintiff does not dispute this. The record contains no evidence of service. But the record does contain plaintiff's "Notice of Violation of Consumers Legal Remedies Act and Demand for Remedy," together with the certified mail return receipt showing delivery to defendant on June 6, 2008. Thus, defendant was put on notice of plaintiff's claim nearly eight months before defendant petitioned to compel arbitration.

remained silent until it lost its motion to now go to arbitration would in this court's view cause an unnecessary waste of time and effort to all concerned but more importantly is unfair and prejudicial to plaintiff. Simply put as one court stated '[t]he courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration.' "

■ To the court's recitation, we add this: We are loathe to condone conduct by which a defendant repeatedly uses the court proceedings for its own purposes (challenging the pleadings with demurrers) while steadfastly remaining uncooperative with a plaintiff who wishes to use the court proceedings for *its* purposes (taking depositions), all the while not breathing a word about the existence of an arbitration agreement, or a desire to pursue arbitration, and, in fact, withholding production of the arbitration agreement until after the demurrer hearing on the day the demurrer is overruled. To believe that defendant was not aware of its late-asserted right to arbitrate until plaintiff filed its SAC strains our imagination to the breaking point. Plaintiff's CLRA notice plainly identified her name and the date of the transaction at issue, together with the vehicle identification number of the traded-in Escort. Magically, however, at the very moment defendant's demurrer was overruled, the arbitration agreement was produced and enforcement sought. We note that " 'the "bad faith" or "willful misconduct" of a party may constitute a waiver and thus justify a refusal to compel arbitration.' " (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 983 [64 Cal.Rptr.2d 843, 938 P.2d 903]; see *Davis v. Blue Cross of Northern California* (1979) 25 Cal.3d 418, 426 [158 Cal.Rptr. 828, 600 P.2d 1060].) Although the trial court made no express finding of bad faith, the tone of its ruling is suggestive of such a finding and, had it been made, sufficient evidence would have supported the finding. True, California has a strong public policy in favor of arbitration. But that public policy is founded upon the notion that arbitration is a " ' "speedy and relatively inexpensive means of dispute resolution." ' " (*St. Agnes, supra,* 31 Cal.4th at p. 1204.) That goal was frustrated by defendant's conduct. Consistent with the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.; see Cal. Stds. Jud. Admin., § 2.2), the court had set trial for May 11, 2009. But defendant did not file its petition to compel arbitration until January 28, 2009, only slightly more than three months before the scheduled trial date and two months before the discovery cutoff under Code of Civil Procedure section 2024.020. Starting anew in an arbitral forum at that late date would delay resolution of the dispute, not advance it.

Substantial evidence supports the court's denial of the petition to compel arbitration. We affirm.

## DISPOSITION

The order is affirmed. Plaintiff shall recover her costs on appeal.

O'Leary, Acting P. J., and Moore, J., concurred.