Filed 6/10/14  Prewitt v. 1-800-GET THIN CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GINA CASTLEBERRY PREWITT et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>1-800-GET THIN et al.,<br><br>Defendants and Appellants. | B246574<br><br>(Los Angeles County<br>Super. Ct. No. BC469464) |

APPEAL from an order of the Superior Court of Los Angeles County, Soussan G. Bruguera, Judge.  Affirmed.

Prindle, Amaro, Goetz, Hillyard, Barnes & Reinholtz and Douglas S. de Heras for Defendants and Appellants.

Law Offices of Ian Herzog, Ian Herzog, Evan D. Marshall and Sandra Tyson for Plaintiffs and Respondents.

_____

*INTRODUCTION*

This is an appeal from the trial court's denial of a petition to compel arbitration. Because substantial evidence supports the trial court's determination the parties seeking to compel arbitration had waived the right to do so, we affirm.

*FACTUAL AND PROCEDURAL SUMMARY*

On September 12, 2011, Gina Castleberry Prewitt (Prewitt) and her husband Adrian Prewitt filed a complaint against Weight Loss Centers; 1-800-GET-THIN; Marvin Anton Perer, M.D.; Valencia Ambulatory Surgery Center, LLC; Top Surgeons, LLC; and New Life Surgery Center.[1] According to the complaint, Gina Prewitt underwent an endoscopic screening procedure for the laparoscopic gastric band surgery known as "lap band" at Valencia Ambulatory Surgery Center.[2] On September 12, 2010, she alleged, she discovered the endoscopic procedure had caused a large tear in her esophagus when she "wound up" in the emergency room of a Kaiser Foundation hospital. Prewitt alleged her first cause of action for medical malpractice against Marvin Anton Perer, M.D., and New Life Surgery Center, Inc. alone; the sixth cause of action for loss of consortium was alleged as to all defendants. (Neither Perer nor New Life Surgery Center is a party to this appeal.)

Prewitt alleged additional counts for intentional misrepresentation and negligent misrepresentation, negligent referral and negligent hiring against the remaining defendants. She alleged 1-800-GET-THIN and Top Surgeons, LLC, doing business

---

[1] Prewitt also named as defendants Modern Institute for Plastic Surgery and Nuri Sabbagh, but it appears Prewitt dismissed both of them in early 2012, and neither is involved in this appeal so we make no further reference to these former defendants.

[2] The record on appeal does not include the original complaint, but its filing is documented in the Los Angeles County Superior Court case information summary, and there appears to be no disagreement as to the original complaint's allegations as described in the other pleadings filed in the trial court as well as the parties' appellate briefing.

under the name Weight Loss Centers, were promoters of the lap band procedure and issued referrals to surgeons and facilities (such as Valencia Ambulatory Surgery Center) providing the actual medical services. Prewitt alleged these entities were not health care providers and did not engage in the practice of medicine or provide "any medically-related professional services." To the contrary, Prewitt alleged these entities were "cogs in the machinery of the lap band industry" whose role was limited to solicitation, referral, marketing and administration to encourage overweight people to have procedures performed by the actual health care providers. More particularly, she alleged, 1-800-GET-THIN operated a call center and education and marketing facility located in Beverly Hills. In turn, Top Surgeons dba Weight Loss Centers referred those patients 1-800-GET-THIN had persuaded to undergo the lap band procedures to surgeons it hired to provide these services and to facilities it managed, including Valencia Ambulatory Surgery Center, where these surgeries were performed. Unlike Dr. Perer, Prewitt alleged, the other defendants engaged in commercial conduct that was unlicensed and required no professional or medical skill.

In November, 1-800-GET-THIN and Top Surgeons, LLC (represented by Douglas de Hera, also counsel in this appeal) filed demurrers to and motions to strike Prewitt's complaint (with no mention of arbitration), which were set for hearing on December 29. Valencia Ambulatory Surgery Center had also been served in October, but it did not respond to calls and letters from Prewitt's counsel.

At the end of November, the trial court conducted a case management conference which was continued to late December to allow all parties to appear and for counsel to meet and confer as to all anticipated matters so that a trial date and associated deadlines could be assigned. There was no mention of arbitration.

In early December, 1-800-GET-THIN and Top Surgeons propounded 14 sets of discovery, comprised of form and special interrogatories, requests for production of documents and requests for admissions. Prewitt answered all of this discovery.

3

Through counsel, Prewitt, 1-800-GET-THIN and Top Surgeons (along with other defendants) appeared at the continued case management conference and hearing on demurrers and motions to strike in late December. At that time, the trial court overruled these defendants' demurrers but granted their motions to strike the punitive damage allegations from Prewitt's complaint.

To assist the court in setting a trial date, counsel for 1-800-GET-THIN and Top Surgeons submitted a trial calendar, which included several cases involving 1-800-GET-THIN, Top Surgeons and related entities, but there was no mention of arbitration. In the section of the case management statement specifically inquiring whether any of the "parties are willing to participate in, have agreed to participate in, or have already participated in" any form of alternative dispute resolution, defense counsel identified only a willingness to participate in mediation and a settlement conference; the boxes specifically provided for the identification of any "Agree[ment] to complete private arbitration" were left blank. Defense counsel also represented the parties had met and conferred on all subjects required by rule 3.724 of the California Rules of Court, which includes "Identifying and, if possible, informally resolving any anticipated motions[,]" and in the portion of the questionnaire seeking the identification of any motions the "party or parties expect to file . . . before trial[,]" counsel specified only an intended motion for summary judgment; there was no mention of a motion to compel arbitration. Trial was set for November 12, 2012.

On January 27, 2012, Prewitt filed her first amended complaint, and a new motion to strike was filed and set for hearing on March 12.

Shortly thereafter, on February 14, 2012, Prewitt filed a motion for leave to file a second amended complaint to seek punitive damages pursuant to Code of Civil Procedure section 425.13.[3] According to the supporting declaration from Prewitt's counsel and attached exhibits, (1) the Food and Drug Administration had issued a warning letter to 1-

---

[3] All undesignated statutory references are to the Code of Civil Procedure.

4

800-GET-THIN and Valencia Ambulatory Surgery Center (in December 2011) based on their failures to apprise prospective patients of the dangers, contraindications, side-effects and precautions associated with the procedure; (2) on February 2, 2012, as reported in the Los Angeles Times, Allergan, Inc. (the manufacturer of the "Lap Band") announced it would no longer sell the device to companies and surgery centers affiliated with 1-800-GET-THIN; (3) a whistleblower and RICO action (Deuel v. 1-800-GET-THIN et al., BC 477064) had been filed against the 1-800-GET-THIN defendants, affiliated surgery centers and principals of these organizations (one of whom had had his medical license revoked), alleging the facilities were operated in a dangerous and substandard condition, procedures were performed by unqualified and unlicensed personnel, unnecessary procedures were performed and records were falsified to fraudulently obtain insurance payments; and (4) a psychological evaluation for one of the plaintiffs (Laura Faitro) in one of the wrongful death cases pending against the same defendants was identical to one purportedly prepared for Prewitt—except for the name, date and surgeon's name.[4] Prewitt's motion was set for hearing on March 12, along with the pending motion to strike directed to the first amended complaint.

On March 28, represented by counsel for 1-800-GET-THIN and Top Surgeons (de Heras), Valencia Ambulatory Surgery Center filed a demurrer to Prewitt's first amended complaint as well as its own motion to strike.[5]

---

[4]    Prewitt argued this last document further supported her fraudulent billing allegations; not only was the psychological evaluation purportedly prepared for Prewitt dated the day *before* she went to Valencia Ambulatory Surgery Center, but it was "word-for-word identical" to another form alleged to have been prepared for another patient at another facility.

[5]    We refer to 1-800-GET-THIN, Top Surgeons and Valencia Ambulatory Surgery Center collectively as the 1-800-GET-THIN defendants.

On February 29, 1-800-GET-THIN and Top Surgeons filed opposition to Prewitt's motion for leave to file her second amended complaint to seek punitive damages, along with evidentiary objections to Prewitt's supporting declaration. In the supporting declaration of Douglas de Heras, counsel for the 1-800-GET-THIN defendants noted the trial court had allowed the parties to agree to a mutually acceptable trial date at the case management conference conducted on December 29, 2011, and trial was set for November 13, 2012. He made no mention of arbitration.

The matters set for hearing in March were continued. In the meantime, Prewitt appeared for deposition in May, submitting to questioning by counsel for the 1-800-GET-THIN defendants.

In addition, Prewitt had served a notice of deposition with document production for Charles Klasky (on behalf of 1-800-GET-THIN and Top Surgeons); the deposition was continued from April 27 to May 30. She also noticed the depositions of the custodians of record and the person or persons most knowledgeable for Top Surgeons and Valencia Ambulatory Surgery Center as well as Valencia nurses Dharma, Padilla and Wells and "Consultant Eileen."

On June 11, on behalf of Top Surgeons and Valencia Ambulatory Surgery Center, counsel for the 1-800-GET-THIN defendants served separate objections to the deposition notices Prewitt had served as well as the production of documents she had requested but said nothing about arbitration.

On June 13, according to the declaration of Prewitt's counsel (Sandra Tyson), defense counsel (de Heras) said he would not be producing the nurses or any witnesses for deposition then or in the future as his bill had not been paid. Then he said, "'I'm going to file a Petition for Arbitration.'"

On June 14, the 1-800-GET-THIN defendants filed a petition to compel arbitration, attaching a one-page document entitled "**PHYSICIAN-PATIENT ARBITRATION AGREEMENT**" (dated September 8, 2010 and purportedly signed by Prewitt and someone on behalf of Valencia Ambulatory Surgery Center), accompanied

6

by declarations from defense counsel (de Heras), Charles Klasky (on behalf of 1-800-GET-THIN and Top Surgeons) and Roberto Macatangay (on behalf of Valencia Ambulatory Surgery Center) as well as portions of Prewitt's deposition testimony.[6]

The first paragraph of the "Physician-Patient Arbitration Agreement" read as follows: "Article 1: **Agreement to Arbitrate:** It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional rights to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration."[7] (Original emphasis.)

The second paragraph provided (in pertinent part): "Article 2. **All Claims Must be Arbitrated:** It is the intention of the parties that this agreement bind all parties whose claims may arise out of or relate to treatment or service provided by the physician . . . ." (Original emphasis.) 1-800-GET-THIN and Top Surgeons claimed entitlement to enforce the arbitration agreement as nonsignatory third party beneficiaries under the agreement.

According to the 1-800-GET-THIN defendants, Prewitt's complaint alleged medical negligence arising out of an endoscopy procedure performed by Perer so,

---

[6]     The 1-800-GET-THIN defendants submitted Prewitt's deposition testimony acknowledging the signature on the document looked like her own (although she did not remember signing the document and indicated she had been given "a stack of papers").

[7]     Above the signature lines provided on the document, the following "NOTICE[]" appeared: "BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. . . ."

7

pursuant to sections 1280, 1281.4 and 1295, the arbitration agreement Prewitt signed before surgery obligated her to arbitrate all of her claims. The 1-800-GET-THIN defendants also asserted they had not waived the right to compel arbitration—notwithstanding their filing of successive demurrers and motions to strike and participation in discovery—as the trial court had allowed Prewitt to file a second amended complaint, the 1-800-GET-THIN defendants had not filed an answer and "[t]o date, only limited discovery has been conducted including [Prewitt's] deposition . . . ."

Prewitt filed opposition (along with evidentiary objections to the Klasky declarations submitted in support of the petition), arguing the 1-800-GET-THIN defendants had failed to meet their initial burden to demonstrate a valid and enforceable arbitration agreement and, even if they had, they had waived the opportunity to compel arbitration (among other arguments). In support of her waiver argument, Prewitt requested judicial notice of minute orders regarding belatedly filed petitions to compel arbitration (pursuant to the same arbitration agreement) in two other cases filed against 1-800-GET-THIN and Top Surgeons (along with affiliated surgery centers and represented by the same defense counsel) in the Los Angeles County Superior Court, predating the first mention of arbitration in this case. More particularly, as evidenced by the February 8, 2012 minute order in Renteria v. Madan et al. (LASC Case No. SC111331), Prewitt argued, at the time of the December 29, 2011 case management conference in her case, a petition to compel arbitration (filed by defense counsel in this case) was already pending in Renteria v. Madan et al., with the Renteria plaintiff's opposition arguing waiver based on the defendants' unreasonable delay and extensive litigation (and the Renteria trial court issued its order (denying the petition) in February 2012). Further, as reflected in the May 2012 order in Faitro et al. v. Top Surgeons et al. (LASC Case No. BC454464), another trial court had already issued a ruling in a class action against 1-800-GET-THIN and Top Surgeons among others (filed in February 2011), where the same defendants represented by the same defense counsel engaged in substantial litigation conduct, before filing a petition to compel arbitration much later. Prewitt argued these orders meant the

8

1-800-GET-THIN defendants' filing of their petition to compel arbitration nine months after she filed her complaint in this case was deliberate because the defendants and their counsel must have had prior knowledge of the existence of the arbitration agreement but demonstrated a pattern of engaging in substantial litigation and otherwise delaying before seeking to arbitrate.

Prewitt filed her second amended complaint on June 25.

On July 27, 1-800-GET-THIN, Top Surgeons and Valencia Ambulatory Surgery Center filed demurrers to Prewitt's second amended complaint.

In a tentative ruling for the November hearing on the petition to compel arbitration, the trial court noted "delay and denial of discovery" by the 1-800-GET-THIN defendants, "and on that basis, the court finds that [Prewitt] will suffer prejudice if the petition is granted." At oral argument, defense counsel (de Heras) maintained Prewitt had failed to demonstrate prejudice as a result of the nine month delay between the filing of the complaint and the filing of the petition to compel (and first mention of) arbitration. He acknowledged that he had filed multiple demurrers and motions to strike, had propounded 14 sets of discovery on Prewitt and she had appeared for deposition (while the 1-800-GET-THIN defendants had filed blanket objections and Prewitt had been forced to file motions to compel witnesses to appear and produce documents at deposition), but said "although my office conducted some preliminary discovery, it really was just preliminary. I mean I didn't even notice plaintiff's deposition. It was noticed by the doctor. We did participate. [¶] The answers that I got back from that discovery wasn't, in my view, very helpful to evaluate the case."[8]

---

[8] In fact, Prewitt had filed a supplemental brief to show that when Charles Klasky (who had signed the declarations on behalf of Top Surgeons and 1-800-GET-THIN in seeking arbitration) was ultimately ordered to appear for deposition on November 8, 2012, he testified he had been hired (to manage a sleep center having nothing to do with Top Surgeons or 1-800-GET-THIN) mere hours before he was presented with a stack of legal papers, including discovery verifications, and asked to sign them on behalf of Top Surgeons and 1-800-GET-THIN, despite his complete lack of knowledge regarding these

Prewitt's counsel argued her requests for judicial notice demonstrated that the 1-800-GET-THIN defendants' behavior in thwarting plaintiffs' efforts to conduct any meaningful discovery while "pried up against a [pending] trial date" established the belated attempt to compel arbitration in her case was a "litigation tactic" these same defendants and their counsel used in other pending cases against them.[9]

After taking the matter under submission, the trial court issued its ruling on January 14, 2013, granting Prewitt's request for judicial notice, sustaining all of her evidentiary objections and denying the petition to compel arbitration, stating as follows: "Defendants failed to meet their burden, proving the existence of a valid arbitration agreement with [Prewitt]. Even assuming, arguendo, defendants established the existence of a valid arbitration agreement, defendants waived the right to compel arbitration."[10]

1-800-GET-THIN, Top Surgeons and Valencia appeal.[11]

_____

entities. The trial court initially indicated the supplemental brief had not been considered but when Prewitt's counsel addressed its contents, the court offered defense counsel additional time and opportunity to respond but he declined the offer.

[9] Defense counsel had requested judicial notice of a trial court's order in yet another case against the same defendants to show that, unlike the Renteria and Faitro trial courts, the trial court in that case had *granted* the 1-800-defendants' petition to compel arbitration, but when the trial court commented such a request was improper for that purpose, defense counsel withdrew it.

[10] In addition, the trial court (1) overruled the demurrers to Prewitt's second amended complaint filed by the 1-800-GET-THIN defendants and Dr. Perer and ordered them to answer; (2) denied the same defendants' motions to strike and (3) granted Prewitt's motion to compel party witnesses' attendance at deposition.

[11] According to their opening brief (without further explanation), the appellants are 1-800-GET-THIN, LLC; "Top Surgeons, LLC (converted out from Top Surgeons, Inc. dba Weight Loss Centers)"; and Valencia Ambulatory Surgery Center, LLC. We refer to these three entities, collectively, as the 1-800-GET-THIN defendants.

10

## *DISCUSSION*

According to the 1-800-GET-THIN defendants, the "Physician-Patient" arbitration agreement Prewitt signed is valid and enforceable as to Valencia Ambulatory Surgery Center (as the agreement was apparently signed on its behalf) as well as 1-800-GET-THIN and Top Surgeons (because they assert they are third party beneficiaries) as to all claims in this "garden variety medical malpractice action," and these entities have not waived their right to compel arbitration.

On this record, substantial evidence supports the trial court's finding of waiver of the right to contractual arbitration. Accordingly, we need not address 1-800-GET-THIN's further arguments regarding the validity and enforceability of the arbitration agreement. (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 557 (*Guess*) ["We agree with the waiver argument and therefore do not discuss or decide whether, had it timely raised the issue, Kirkland could have compelled Guess to arbitrate the claims that are the subject of this lawsuit."]; *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 984 (*Sobremonte*) ["Because of our ruling [on the issue of waiver], we need not consider issues relating to the validity or enforceability of the arbitration provision."]; and see *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443).

### *Legal Principles Governing Waiver of Contractual Arbitration and the Standard of Review.*

California's strong public policy favors arbitration as a relatively quick and cost-effective means to resolve disputes. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9; *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*St. Agnes*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971-972.) Absent certain limited exceptions, California law requires the trial court to enforce a valid written agreement to arbitrate any controversy that falls within the scope of the

11

agreement unless "the right to compel arbitration has been waived" by the moving party.[12] (§ 1281.2, subd. (a).)

"In the arbitration context, '[t]he term "waiver" [is] used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.'" (*St. Agnes, supra,* 31 Cal.4th at p. 1195, fn. 4; accord, *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 315.) "This does not require a voluntary relinquishment of a known right; to the contrary, a party may be said to have 'waived' its right to arbitrate by an untimely demand, even without intending to give up the remedy. In this context, waiver is more like a forfeiture arising from the nonperformance of a required act." (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 944; accord, *Platt Pacific, Inc.*, at pp. 314-315.)

In light of the strong public policy favoring arbitration, claims of waiver are subject to "close judicial scrutiny," and the "party seeking to establish a waiver bears a heavy burden" with all doubts resolved in favor of arbitration. (*St. Agnes, supra*, 31 Cal.4th at p. 1195; *Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 443.) While "no single test" can delineate all the possible conduct that may constitute a waiver of arbitration (*St. Agnes*, at p. 1195), in assessing whether waiver has occurred, the trial court is guided by the six relevant factors identified by the Supreme Court in *St. Agnes*: "(1) [W]hether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into the preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking

---

[12] Federal law, which also recognizes and enforces a strong public policy favoring arbitration (*St. Agnes, supra,* 31 Cal.4th at p. 1204; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740, 1745, 179 L.Ed.2d 742]), similarly acknowledges the right to arbitrate may be forfeited under certain circumstances. (See *St. Agnes*, at p. 1195.) In this case, there is no dispute the agreements are governed by California law, not the Federal Arbitration Act.

arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled or prejudiced the opposing party." (*Id*. at p. 1196 [second set of brackets in original; internal quotation marks omitted]; accord, *Lewis v. Fletcher Jones Motor Cars, Inc., supra*, 205 Cal.App.4th at p. 445; cf. *Burton v. Cruise, supra*, 190 Cal.App.4th at pp. 944-945 [applying a four factor test when two of the factors identified in *St. Agnes*— whether a defendant seeking arbitration had filed a counterclaim and whether important intervening steps had taken place—were not applicable].)

Waiver does not occur by "mere participation in litigation." (*St. Agnes, supra*, 31 Cal.4th at p. 1203.) There must also be prejudice. (*Id*. at pp. 1203-1204; *Hoover v. American Income Life Ins. Co*. (2012) 206 Cal.App.4th 1193, 1205 (*Hoover*) [prejudice is critical to the analysis of waiver; absent prejudice, there can be no waiver].) Prejudice, moreover, is not established merely by showing the nonmoving party has incurred costs and legal expenses in connection with the litigation. (*St. Agnes*, at p. 1203; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1479.) However, "egregious delay may result in prejudice." (*Burton v. Cruise, supra,* 190 Cal.App.4th 939, citing *St. Agnes, supra,* 31 Cal.4th at p. 1204 ["prejudice is typically found where 'the petitioning party's conduct has substantially undermined [the] important public policy [in favor of arbitration] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration'"]; and *Guess?, supra,* 79 Cal.App.4th at pp. 555, 558, fn. 1; *Hoover*, 206 Cal.App.4th at p. 1205; *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1451-1452 (*Adolph*).)

"Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court." (*St. Agnes, supra*, 31 Cal.4th at p. 1196; accord, *Burton v. Cruise, supra*, 190 Cal.App.4th at p. 946 ["'"[i]t was the trial court's duty to determine whether" the petitioners met their

"burden of proof; it is our duty to determine whether there is substantial evidence to support the trial court's findings that it did"'"'"].) "We construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance." (*Burton*, at p. 946; accord, *Adolph v. Coastal Auto Sales, Inc., supra*, 184 Cal.App.4th at p. 1452.) It is only when "'the facts are undisputed and only one inference may reasonably be drawn'" that the issue is one of law. (*St. Agnes*, at p. 1196; accord, *Platt Pacific, Inc. v. Andelson, supra*, 6 Cal.4th at p. 319; *Hoover*, 206 Cal.App.4th at p. 1202.)

***Substantial Evidence Supports the Trial Court's Determination the 1-800-GET-THIN Defendants Waived the Right to Contractual Arbitration.***

In challenging the trial court's waiver finding, the 1-800-GET-THIN defendants argue: "The factors enumerated in *St. Agnes* support a finding of no waiver and compelling arbitration." First, they assert, their "conduct is consistent with an intention to arbitrate" because it is their "custom and practice" both "to offer patients an arbitration agreement" and "to give these patients copies of the signed arbitration agreement." Second, they say, they "did not substantially invoke the litigation machinery." They filed demurrers and motions to strike "to prevent default and preserve [their] rights. Discovery was basic in scope . . . ." Third, they did not request arbitration close to a trial date "as no trial date was ever set."[13] Fourth, they "have not filed any cross-complaint. . . . [Fifth, they] have not taken advantage of any judicial discovery procedures not available in

---

[13] This statement is directly contradicted by the record. As stated in defense counsel's own supporting declaration and repeatedly emphasized in opposition to Prewitt's motion for leave to file her second amended complaint, the trial court "set . . . trial for **November 13, 2012**[,]" after the parties met and conferred and mutually agreed to that date. In fact, the 1-800-GET-THIN defendants *faulted Prewitt* for "failing to file the Motion no later than nine months before the original trial date." (Original emphasis.) Even where no trial date has been set, that fact is not dispositive on the issues of waiver and prejudice in any case. (See *Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 453.)

14

arbitration. [¶] Finally, there was no unreasonable delay in seeking arbitration which affected, misled or prejudiced [Prewitt]."

Essentially, the 1-800-GET-THIN defendants merely repeat the factors identified in *St. Agnes* and assert each one is satisfied in this case. Citing *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, the 1-800-GET-THIN defendants argue "'waiver does not occur by mere participation in litigation'" and the "'mere expense of responding to preliminary court motions, by itself,' does not constitute prejudice." In *Groom* the defendant (Health Net) filed a series of demurrers to the original and amended complaints and served the plaintiff (Groom) with form and special interrogatories, requests for admission and requests for production of documents. Eleven months after Health Net had been served with the original complaint, it petitioned to compel arbitration. The trial court denied the petition on the ground Health Net had waived arbitration. Our colleagues in Division Four of this court reversed, concluding there was no substantial evidence Groom had suffered any prejudice as a result of the delay in seeking arbitration. (*Id*. at p. 1196.) In reaching this conclusion Division Four found it significant that no responses to the written discovery requests had been made, no depositions had been taken and no motions had been filed. (*Ibid*.) The court was not persuaded by Groom's argument that filing demurrers, a process unavailable in arbitration, had forced her to articulate in detail the legal theories underlying her causes of action: "This analogy is not persuasive. One can learn far more about an opponent's case through discovery than through demurrer. That is one of the reasons discovery procedures exist. [Citations.] In all the cases relied upon by *Groom*, prejudice was shown by the fact that by engaging in discovery, the defendant learned all the details of the plaintiff's case before demanding arbitration." (*Ibid*.; accord, *St. Agnes, supra*, 31 Cal.4th at p. 1204 [insufficient evidence of waiver when the parties had not litigated the merits of the case and no discovery of the claims had occurred].) Here, in contrast, the 1-800-GET-THIN defendants engaged in the very kind of extensive discovery and motion practice the court in *Groom* found lacking.

15

The 1-800-GET-THIN defendants' passing mention of our decision in *Roman v. Superior Court, supra,* 172 Cal.App.4th 1462, in which we upheld the trial court's implied finding that the defendants' participation in litigation had not resulted in a waiver, is also unavailing. Unlike the facts presented here, the petition to compel arbitration in *Roman* was filed a mere two months after the complaint; and "[a]t the time, no substantive discovery responses had been served by either side and no formal hearings had taken place on the discovery issues." (*Id*. at p. 1479.) To be sure, in confronting the far different procedural posture presented by that case, we observed in *Roman* the limited discovery that had been served (a single set of form interrogatories and a single request for production of documents) was authorized under the rules applicable to the arbitration. (*Ibid*.) While the far more extensive discovery already accomplished in this case may also have been available in the arbitral forum, that is but one factor for consideration in the waiver analysis and, under our deferential standard of review, does not alone necessarily outweigh the other, substantial evidence in support of the trial court's waiver finding. (See *Lewis v. Fletcher Jones Motor Cars, Inc., supra*, 205 Cal.App.4th at pp. 449-453.)

"It is not enough that the trial court potentially could have reached a different conclusion; rather, we may reverse the trial court's waiver finding only if the record establishes a *lack* of waiver *as a matter of law*." (*Lewis v. Fletcher Jones, supra,* 205 Cal.App.4th at p. 453, italics added; *Hoover, supra,* 206 Cal.App.4th at p. 1202 [same].) Further, as explained in *St. Agnes, supra,* 31 Cal.4th at page 1196, the application of our Supreme Court's multifactor test to the assessment of a "waiver [claim] is not a mechanical process, and no one factor is predominant." (*Burton v. Cruise, supra,* 190 Cal.App.4th at pp. 944-945.) "[A] determination by a trial court that the right to compel arbitration has been waived ordinarily involves a question of fact, which is binding on the appellate court if supported by substantial evidence. [As an] appellate court[, we] may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver." (*Burton v. Cruise, supra,* 190 Cal.App.4th at p. 946, internal

16

quotations and citation omitted; *Guess?, supra,* 79 Cal.App.4th at p. 557, citing *Davis v. Blue Cross of Northern California* (1979) 25 Cal.3d 418, 425-426 ["For us, the question is whether the trial court's decision is supported by substantial evidence. If it is, we must affirm."].)

*Unreasonable Delay.*

""""[A] demand for arbitration must not be unreasonably delayed. . . . [A] party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration. [Citations.]"' (*Sobremonte*, *supra*, 61 Cal.App.4th at p. 992.) As the part[ies] seeking to compel arbitration, [the 1-800-GET-THIN defendants] 'had the responsibility to "timely seek relief either to compel arbitration or dispose of the lawsuit, before the parties and the court have wasted valuable resources on ordinary litigation." [Citation.]' (*Id*. at pp. 993–994.) As [the court] explained in *Burton*, 'a party's unreasonable delay in demanding or seeking arbitration, in and of itself, may constitute a waiver of a right to arbitrate.' (*Burton, supra*, 190 Cal.App.4th at p. 945.)" (*Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at pp. 445-446.)

Here, the 1-800-GET-THIN defendants do not even attempt to explain the considerable delay between the time Prewitt filed her complaint (in September 2011) and their *first mention* of arbitration immediately followed by the filing of their petition to compel arbitration (in June 2012)—*nine months later*.

In *Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th 436, the defendant participated in litigation for five months, filing multiple demurrers and motions to strike and participating in discovery without moving to compel arbitration. Agreeing that the defendant's delay was unreasonable, the reviewing court affirmed a finding of waiver: "We cannot fault the trial court's conclusion this delay was unreasonable under these circumstances. Indeed, other courts have found comparable delays to be unreasonable and justification for a waiver finding. (*Guess?*[*, supra,*] 79 Cal.App.4th [at p.] 556 [less than four months between filing lawsuit and motion to compel arbitration]; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228-1229 . . . [five

17

and one-half months between filing lawsuit and motion to compel arbitration]; *Augusta*[ *v. Keehn & Associates* (2011)] 193 Cal.App.4th [331,] 338-339, [six and one-half months between filing lawsuit and motion to compel arbitration]; *Adolph v. Coastal Auto Sales, Inc.* (2011) 184 Cal.App.4th [1443,] 1446, 1449, 1451-1452 [(*Adolph*)] [six months between filing lawsuit and demand for arbitration].)" (*Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 446.)

*Conduct Inconsistent with the Intention to Arbitrate.*

In *Adolph, supra,* 184 Cal.App.4th 1443, the trial court noted that within the six-month time frame between the filing of the complaint and the filing of the petition to compel arbitration in that case—"inconsistent with an intent to arbitrate"—the defendant in *Adolph* "filed two demurrers, accepted and contested discovery request[s], engaged in efforts to schedule discovery, omitted to mark or assert arbitration in its case management statement. [¶] The effect of these inconsistent actions by defendant has resulted in more than merely participating in litigation or expending legal cost[s] but in prejudice to the plaintiff by substantially undermining plaintiff's ability at this late date to take advantage of the benefits and cost savings provided by arbitration. It is clear to the court that defendants intended by their conduct to proceed with their court action. It was only until defendant's second demurrer was overruled that it now request[s] this court that it litigate now in another forum to which all appearances it hopes that it will limit its litigation risk and expense. It will also increase plaintiff's expenses and burdens, having already required plaintiff to expend its efforts and resources in vigorously litigating this case in court. To allow defendant at this time with a trial set for May when it has known of its right to arbitrate this matter since June 2008[] yet remained silent until it lost its motion to now go to arbitration would in this court's view cause an unnecessary waste of time and effort to all concerned but more importantly is unfair and prejudicial to plaintiff. Simply put as one court stated '[t]he courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration.'" (*Adolph, supra,* 184 Cal.App.4th at pp. 1451-

18

1452, quoting *Guess?, supra,* 79 Cal.App.4th at p. 558, footnote and further citations omitted.)

As the *Adolph* court added to the trial court's assessment in that case: "We are loathe to condone conduct by which a defendant repeatedly uses the court proceedings for its own purposes (challenging the pleadings with demurrers) while steadfastly remaining uncooperative with a plaintiff who wishes to use the court proceedings for its purposes (taking depositions), all the while not breathing a word about the existence of an arbitration agreement, or a desire to pursue arbitration, and, in fact, withholding production of the arbitration agreement until after the demurrer hearing on the day the demurrer is overruled. To believe that defendant was not aware of its late-asserted right to arbitrate until plaintiff filed its SAC strains our imagination to the breaking point." (*Adolph, supra,* 184 Cal.App.4th at p. 1452.)

Similarly, the 1-800-GET-THIN defendants conduct in this case belies any claimed intention to arbitrate. They filed multiple demurrers and motions to strike Prewitt's complaint and amended complaints. They served discovery and noticed Prewitt's deposition, and she provided answers and appeared for deposition. Yet, the 1-800-GET-THIN defendants did not comply with their own discovery obligations, forcing Prewitt to incur the time and delays of filing multiple motions to compel (without even considering the obfuscation and gamesmanship suggested by the presentation of a witness like Klasky as two of these three entities' "person most knowledgeable").[14] The 1-800-GET-THIN defendants appeared (through their counsel) for case management conferences, representing they had met and conferred in good faith regarding all issues, including potential motions, and, despite specific inquiries regarding arbitration and agreements to arbitrate, these defendants made no mention whatsoever of the arbitration

---

[14] Prewitt argues: "It is unclear how [the 1-800-GET-THIN defendants] can argue that these entities are somehow third party beneficiaries of an arbitration agreement while simultaneously surrounding them with what has so far turned out to be an impenetrable wall of ignorance."

19

agreement—purportedly binding on all parties as to all claims—until *nine months* after Prewitt's complaint was filed. In fact, instead of communicating any intention to pursue arbitration in this case, these defendants identified a motion for summary judgment as the only motion they anticipated filing, submitted defense counsel's trial calendar and agreed to a trial date. (*Lewis v. Fletcher Jones Motor Cars, Inc., supra*, 205 Cal.App.4th at p. 448 ["A waiver of the right to arbitrate may properly be implied from any conduct which is inconsistent with the exercise of that right. [Citation.] Partial or piecemeal litigation of issues in dispute, through pretrial procedures, may in many instances justify a finding of waiver . . . ."]; *id*. at pp. 449-453 [filing of demurrers and motions to strike and participation in discovery without raising the right to arbitrate results in prejudicial delay and waiver of the right to compel arbitration].)

Notably, although the 1-800-GET-THIN defendants claim their own entitlement to arbitration pursuant to the "Physician-Patient" arbitration agreement (asserting 1-800-GET-THIN and Top Surgeons are non-signatory third party beneficiaries), they made no attempt to compel arbitration to include the actual physician (Dr. Perer) who had performed Prewitt's procedure.[15] Further still, the judicially noticed orders in other cases involving these same defendants, the same agreement and the same defense counsel support the conclusion, these defendants' delay was a deliberate and intentional litigation tactic, just as Prewitt argued. "'[T]he "bad faith" or "willful misconduct" of a party may constitute a waiver and thus justify a refusal to compel arbitration.'" (*Engalla v. Permanente Medical Group, Inc., supra,* 15 Cal.4th at p. 983; and see *Davis v. Blue Cross of Northern California, supra,* 25 Cal.3d at p. 426.)

*Prejudice.*

---

[15]    Indeed, according to the declaration of Marvin A. Perer, M.D. (represented by different defense counsel), in September 2010, when he performed an esophagogastroduodenoscopy ("EGD") with biopsy on Prewitt to rule out an upper GI lesion in advance of her lap band weight loss surgery, he was providing part-time gastroenterology services to Top Surgeons, *Inc*. (not LLC), as an *independent contractor*, working for a flat fee.

As the foregoing discussion illustrates, the six factors identified in *St. Agnes* may overlap. For example, litigation conduct in any given case may not only be "inconsistent with the right to arbitrate" (the first factor identified in *St. Agnes*) but may also demonstrate the "litigation machinery has been substantially invoked and the parties were well into the preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate" (the second "*St. Agnes* factor"), and the specific facts supporting findings as to both of these factors may well coincide with "delay[] for a long period before seeking a stay" (the third factor). Furthermore, it is unnecessary for a party arguing that the right to compel arbitration has been lost to demonstrate that all six factors are satisfied; just as in *Burton v. Cruise, supra,* 190 Cal.App.4th at pp. 944-945, the 1-800-GET-THIN defendants apparently did not file a counterclaim (the fourth factor) or take "important intervening steps" such as conducting discovery that would be unavailable in arbitration (the fifth factor). As our Supreme Court emphasized in *St. Agnes, supra,* 31 Cal.4th 1187, it is the determination of "whether . . . litigation results in prejudice" that is "critical in waiver determinations." (*Id.* at p. 1203.)

As the 1-800-GET-THIN defendants note, California has a strong public policy in favor of arbitration, but "that public policy is founded upon the notion that arbitration is a 'speedy and relatively inexpensive means of dispute resolution.'" (*St. Agnes, supra*, 31 Cal.4th at p. 1204.) Just as the courts concluded in considering the defendants' conduct in *Adolph, supra,* 184 Cal.App.4th at page 1452, and in *Burton v. Cruise, supra,* 190 Cal.App.4th at page 949, the record in this case supports the conclusion that goal was thwarted, not served, by the 1-800-GET-THIN defendants' conduct in this case. Forcing Prewitt to start over again in an arbitral forum at this late date would delay resolution of this dispute, not advance it. "California public policy strongly favors arbitration clauses precisely to respect contractual choices to avoid the inherent delays and ever-increasing costs of litigation. By litigating rather than arbitrating until the time of trial, [the 1-800-GET-THIN defendants] ha[ve] circumvented the expected benefits to be achieved from a speedy and relatively inexpensive arbitral forum. Depriving a party of the benefits of his

21

or her bargain is the epitome of prejudice.  Here, arbitration delayed is arbitration denied." (*Burton v. Cruise, supra,* 190 Cal.App.4th at p. 949; *St. Agnes, supra*, 31 Cal.4th at p. 1204 [prejudice is typically found where "the petitioning party's conduct has substantially undermined [the] important public policy [in favor of arbitration] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration"].)

Just as in *Adolph, supra,* 184 Cal.App.4th at page 1452, and *Burton v. Cruise, supra,* 190 Cal.App.4th at page 949, we find substantial evidence supports the conclusion granting the belatedly filed petition to compel arbitration on this record would deprive Prewitt of any benefits theoretically available through arbitration, including the speedy resolution of this dispute.  "There is no fixed stage in a lawsuit beyond which further litigation waives the right to arbitrate.  Rather, the court views the litigation as a whole in determining whether the parties' conduct is inconsistent with a desire to arbitrate." (*Hoover, supra,* 206 Cal.App.4th at p. 1204.)  On appeal, we do not decide whether this record could support a finding of nonwaiver in the first instance; as this record does not establish a *lack* of waiver as a matter of law, we must affirm.  (*Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 453; *St. Agnes, supra*, 31 Cal.4th at p. 1196.)

## DISPOSITION

The order is affirmed.  Prewitt is entitled to her costs on appeal.

WOODS, J.

**We concur:**

**PERLUSS, P. J.**                                   **SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.