Filed 11/6/15  Burkeen v. Skilled Healthcare Group CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JAMES BURKEEN<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SKILLED HEALTHCARE GROUP, INC., et al.<br><br>Defendants and Appellants. | G050702<br><br>(Super. Ct. No. 30-2014-00707055)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Frederick Paul Horn, Judge.  Affirmed.

Wroten & Associates, Kippy L. Wroten, Laura K. Sitar, and Andrew R. Quinio for Defendants and Appellants.

Garcia, Artigliere & Medby, Stephen M. Garcia, and Mark A. Schadrack for Plaintiffs and Respondents.

\*        \*        \*

James Burkeen, individually and as successor in interest to his mother Marian Burkeen, filed a complaint in superior court for wrongful death, elder abuse, and other causes of action against Skilled Healthcare Group, Inc., and Fountain Care Center, LLC (collectively, Fountain Care). Almost five months later, Fountain Care petitioned to compel arbitration of James's claims. The court denied the petition, finding Fountain Care had waived its contractual right to arbitrate James's claims.

On appeal, Fountain Care contends the court erred by denying its petition to compel arbitration.[1] We disagree and affirm the order.

FACTS AND PROCEDURAL HISTORY

On September 26, 2012, Marian executed a durable power of attorney (the Power of Attorney) appointing James as her attorney in fact with broad powers to act on her behalf.

Around October 4, 2013, Marian was admitted to Fountain Care's nursing facility (the Facility).

On October 4, 2013, James, on Marian's behalf, signed the Facility's admission agreement and two arbitration agreements. One arbitration agreement applied to medical malpractice claims, while the other agreement applied to other types of claims, such as claims arising from the Facility's provision of services or claims alleging elder abuse. Under the arbitration agreements, any such claims would be determined by arbitration.

_____

[1] The order is appealable under Code of Civil Procedure section 1294, subdivision (a).

We refer to James and Marian Burkeen individually by their first names. We mean no disrespect.

2

On February 25, 2014, James (individually and as Marian's successor in interest) filed a complaint against Fountain Care alleging causes of action for wrongful death, elder abuse, negligence, and negligent hiring and supervision. The complaint alleged Marian received inadequate health care while at the Facility during October of 2013, and died as a result of the Facility's negligence.

On April 1, 2014, Fountain Care sent James a letter concerning scheduling the deposition of the person most knowledgeable at Fountain Care. The second paragraph of the letter stated: "Also, this matter is subject to binding arbitration. Please refer to the attached Arbitration Agreements enclosed and advise whether you will be stipulating to binding arbitration so we can avoid the time and expense of filing a Petition to Compel Arbitration." The letter, however, did *not* request a copy of the Power of Attorney or even mention the document.

Three days later, on April 4, 2014, Fountain Care filed demurrers to, and motions to strike, James's complaint. James filed oppositions to the demurrers and motions to strike. Fountain Care filed four reply briefs in support of its motions.

On May 21, 2014, Fountain Care served a case management conference statement on James. The statement reaffirmed that Fountain Care intended to arbitrate.

On May 29, 2014, James filed an amended complaint.

On May 30, 2014, Fountain Care served on James a "First Request for Production of Documents." Although Fountain Care requested 17 types of documents (such as insurance policies, correspondence, prescriptions, and Medicare and Social Security Disability cards), it did *not* request the Power of Attorney.

On June 4, 2014, the court set trial for May 4, 2015.

On June 9, 2014, Fountain Care filed demurrers to, and motions to strike parts of, James's amended complaint. James responded by filing oppositions to Fountain Care's demurrers and motions to strike. Fountain Care then filed reply briefs in support of its demurrers and motions to strike.

3

During the foregoing time period (from March 2014 to July 2014), the parties exchanged dueling motions and engaged in discovery proceedings, including propounding and responding to interrogatories and requests for production of documents and depositions. James propounded the majority of litigation proceedings. James served six sets of production demands and one set of form and special interrogatories. James also took the deposition of the "Person Most Knowledgeable" at Fountain Care and filed a motion to quash a Fountain Care subpoena for business records related to Marian. Fountain Care filed a motion to quash a subpoena by James and additionally served subpoenas of its own requesting Marian's health records from various health care providers.

On July 7, 2014, in response to Fountain Care's production demand, James produced the Power of Attorney.

Over three weeks later, on July 31, 2014, Fountain Care petitioned to compel arbitration.

On August 1, 2014, Fountain Care filed an ex parte application for an order staying the court proceedings pending the determination of its petition to compel arbitration. On August 4, 2014, the court granted Fountain Care's application to stay the proceedings, despite James's opposition.

On August 25, 2014, the court denied Fountain Care's petition to compel arbitration. The court made the following findings. Fountain Care sent James a demand for arbitration on April 1, 2014, but then, instead "of promptly petitioning the court for arbitration," delayed for four months before filing for arbitration on July 31, 2014. During this delay, Fountain Care "propounded discovery, resisted discovery, attacked the pleadings twice and attended the Case Management Conference," and the court had set a trial date. Fountain Care's "actions were inconsistent with invoking the right to arbitrate." Fountain Care waived its right to arbitrate James's claims by "(1) delaying its arbitration demand for an unreasonable time period; (2) engaging in litigation on the

4

merits of [James's] claims and taking other steps inconsistent with the right to arbitration; and (3) prejudicing [James] through the delays and litigation on [James's] claims. [Citation.] The goal of speedy and relatively inexpensive means of dispute resolution 'was frustrated by [Fountain Care's] conduct.' [Citation.] [Fountain Care] waived the opportunity to arbitrate, because of the prejudicial delay."

DISCUSSION

Fountain Care contends the court erred in finding it waived its right to arbitration because the court failed to consider "the reasonableness of its delay and litigation," as well as the alleged lack of prejudice to James, "in light of the strong public policy preference for arbitration."

A. *Governing Principles and Standard of Review*

"California law favors arbitrations as a relatively quick and cost-effective means to resolve disputes." (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 944 (*Burton*).) Under Code of Civil Procedure section 1281.2, a court will grant a petition to compel contractual arbitration if the court "determines that an agreement to arbitrate the controversy exists." The statute establishes an exception, however, where the court determines that the petitioner has waived the right to arbitration. (*Id*., subd. (a).) Waiver claims receive "close judicial scrutiny," and the "party seeking to establish a waiver bears a heavy burden" with all ambiguities decided in favor of supporting the arbitration agreement. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*St. Agnes*).)

In *St. Agnes*, our Supreme Court established a multi-factor test for evaluating whether a party has waived a contractual right to arbitration. (*St. Agnes*,

5

*supra*, 31 Cal.4th at p. 1196.)[2] Of these factors, the following are pertinent to this appeal: (1) Did the party requesting arbitration act inconsistently with the right to arbitrate or otherwise substantially invoke the litigation process? (2) Were the parties well into the preparation of a lawsuit before the party seeking arbitration notified the opposing party of an intent to arbitrate? (3) Was the arbitration request close to the trial date or delayed for a long period of time before seeking a stay? (4) Has the delay affected, misled, or prejudiced the opposing party?

Under the *St. Agnes* test, each case must be examined in context and no one factor predominates. (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195.) Nonetheless, in any particular case, a single factor may be determinative. For example, "a party's unreasonable delay in demanding or seeking arbitration, in and of itself, may constitute a waiver of a right to arbitrate." (*Burton*, *supra*, 190 Cal.App.4th at p. 945 [citing *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19].) "When no time limit for demanding arbitration is specified, a party must still demand arbitration within a reasonable time. [Citation.] . . . [Citation.] [W]hat constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case.'" (*Wagner*, at p. 30.) Furthermore, a party cannot pursue "courtroom litigation only to turn towards the arbitral forum at the last minute,

---

[2] The *St. Agnes* test consists of six potentially relevant factors a court may consider when assessing a waiver claim: "'"(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."'" (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)

6

thereby frustrating the goal of arbitration as a speedy and relatively inexpensive means of dispute resolution." (*Burton*, at p. 945.)

On appeal, the issue of whether a party has waived the right to arbitration is a factual question we review under the substantial evidence standard of review. (*Burton*, *supra*, 190 Cal.App.4th at p. 947.) We affirm the trial court's determination if it is supported by substantial evidence. (*Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1449-1450.) We "'presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence.'" (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653.) An appellate court will reverse a trial court's finding of waiver (1) only if "the record as a matter of law compels finding nonwaiver" (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211), or (2) stated another way, if only one inference may reasonably be drawn from undisputed facts (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196).

Fountain Care contends the de novo standard of review should apply here because "there is no dispute as to whether there was a delay, or whether there was participation in litigation and discovery by the parties." But even though Fountain Care thereby concede it did delay in petitioning for arbitration and it did participate "in litigation and discovery," these broadly stated concessions are not the critical facts here. Rather, the most salient facts and inferences to be drawn from the record concern Fountain Care's claim that its delay was reasonable because it needed the Power of Attorney but did not possess it. "Under the circumstances, where different inferences may be drawn depending upon the weight to be afforded to certain facts, we review the trial court's ruling under the more deferential substantial evidence standard of review."

7

(*Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1043 (*Bower*).)[3]

B. *Substantial Evidence Supports the Trial Court's Finding Fountain Care Waived the Right to Arbitrate*

The court found Fountain Care waived the right to arbitrate James's claims by (1) unreasonably delaying its arbitration demand; (2) engaging in litigation on James's claims and taking other steps inconsistent with the right to arbitration; and (3) thereby prejudicing James. We examine each finding in turn to determine whether it is supported by substantial evidence.

1. *Unreasonable Delay*

Fountain Care claims it reasonably delayed filing a petition to compel arbitration because it did not possess the Power of Attorney and believed that, without the Power of Attorney, its petition would be denied for failing to demonstrate James was authorized to bind Marian's claims to arbitration. Fountain Care describes its critical need for the Power of Attorney variously, stating it "could not" or was "unable to bring" a petition, or was "precluded from" or "legally foreclosed from immediately filing" a petition.

At the hearing, the following colloquy took place:

"The Court: Why didn't you file a petition to arbitrate early on?

---

[3] For example, according to Fountain Care's petition to compel arbitration *and* its opening brief on appeal, James was "holding" the Power of Attorney when he signed the arbitration agreements as Marian's attorney in fact; it is unclear whether Fountain Care uses the verb "holding" literally or figuratively. James notes Fountain Care does not explain why it "allegedly did not have a copy of the [Power of Attorney] in [its] file."

8

"Mr. Quinio:  The petition was attempting to be perfected with the power of attorney, Your Honor.  We were waiting for that power of attorney in order to submit that.

"The Court:  Say that again.  The petition had to be perfected with the power of attorney, what do you mean?

"Mr. Quinio:  Yes.  We wanted to ensure that the petition had a power of attorney because Mr. Burkeen signed the arbitration agreement on behalf of his mother, Marian Burkeen, and we did not want to risk filing the petition and have it be denied because of the absence of agency."

Later in the hearing, the following colloquy took place:

"[The Court:]  Now, is there any other reason that you've got to justify not requesting arbitration earlier?

"[Mr. Quinio:]  [A] lot of the time was spent responding to the discovery in litigation, the majority presented by the plaintiffs.  We were walking the balance of protecting the rights and also preserving our right to arbitration."

"The Court:   . . . So you say you didn't have time, is that your response? . . .  [Y]ou didn't have time to file the petition to arbitrate because you were responding to their motion . . . ?

"Mr. Quinio:  No, a combination of things, Your Honor."

"The Court:   . . . But you just told me that one of the reasons you couldn't file the petition is because you're so busy responding to these motions.  All you had to do is file a petition to arbitrate.

"Mr. Quinio:  At the risk of having it denied because of the absence of the power of attorney, Your Honor."

As the party seeking arbitration, Fountain Care "had the responsibility to 'timely seek relief either to compel arbitration or dispose of the lawsuit, before the parties and the court . . . wasted valuable resources on ordinary litigation.'"  (*Sobremonte v.*

9

*Superior Court* (1998) 61 Cal.App.4th 980, 993-994.) "'[A] party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration.'" (*Id*. at p. 992.)

Here, around five months elapsed before Fountain Care petitioned to compel arbitration. Although Fountain Care made arbitration demands twice, it waited until the last day of July to finally petition to compel arbitration. During this five-month delay, Fountain Care litigated the merits of James's claims through multiple demurrers and motions to strike, as well as participating in discovery. Such a delay is sufficient to support a finding of waiver. (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 556 (*Guess?*) [less than four-month delay]; *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 446 (*Lewis*) [approximately five-month delay]; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d. 1220, 1228-1229 [five and one-half month delay].)

Relying primarily on *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 377-378, Fountain Care contends a delay in asserting an arbitration right is reasonable when the option of petitioning for arbitration is foreclosed by existing law or has little chance of succeeding under the law as it existed when the complaint was filed. In *Iskanian*, the defendant petitioned to compel arbitration in response to a class action complaint. (*Id.* at p. 375.) After the trial court granted the petition and the matter was pending in the Court of Appeal, our Supreme Court decided *Gentry v. Superior Court* (2007) 42 Cal.4th. 443. *Gentry* restricted the enforceability of waivers of class action lawsuits in employment arbitration contracts. Accordingly, the appellate court remanded *Iskanian* to the trial court for reassessment in light of *Gentry*. (*Iskanian*, at p. 361.) On remand, the defendant voluntarily withdrew the motion to compel arbitration, and the parties proceeded to litigate the issue. (*Ibid.*) Shortly thereafter, the United States Supreme Court issued *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740]. The decision called *Gentry* into question, and the

10

defendant was thus able to renew the petition to arbitrate despite having previously withdrawn the motion.  (*Iskanian*, at p. 375.)

Iskanian is inapposite to the instant case.  Although Fountain Care correctly contends it bore the burden of establishing the existence of a valid arbitration agreement (*Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301), it was *not* foreclosed by that legal requirement from petitioning to compel arbitration.  "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable."  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.)  Here, Fountain Care possessed the written arbitration agreements.  Each arbitration agreement signed by James states, "By virtue of Resident's consent, instruction and/or durable power of attorney, I hereby certify that I am authorized to act as Resident's agent . . ."

Nor did California Rules of Court, rule 3.1330 foreclose Fountain Care from filing the arbitration petition without the Power of Attorney.  "A petition to compel arbitration or to stay proceedings pursuant to Code of Civil Procedure sections 1281.2 and 1281.4 must state, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration.  The provisions must be stated verbatim or a copy must be attached to the petition and incorporated by reference."  (*Ibid.*)  As stated above, Fountain Care had copies of the arbitration agreements.

Finally, even if Fountain Care actually (and reasonably) believed the Power of Attorney was essential to a petition to compel arbitration, Fountain Care offers no explanation for its almost three-month delay in requesting production of the document.  Fountain Care made 17 requests for production on May 30, 2014, but failed to request the allegedly crucial Power of Attorney.  Furthermore, even after James produced the Power

11

of Attorney, Fountain Care delayed over three weeks before filing its petition to compel arbitration.

In sum, Fountain Care fails to offer a convincing justification for delaying almost five months to petition to compel arbitration. Substantial evidence supports the court's finding the delay was unreasonable.

2. *Engaging in Litigation and Taking Other Steps Inconsistent with the Right to Arbitration*

"'A waiver of the right to arbitrate may properly be implied from any conduct which is inconsistent with the exercise of that right. [Citation.] Partial or piecemeal litigation of issues in dispute, through pretrial procedures, may in many instances justify waiver. . . .' [Citation.] 'The trial court must . . . view the litigation as a whole and determine if the parties' conduct is inconsistent with a desire to arbitrate.'" (*Lewis*, *supra*, 205 Cal.App.4th at pp. 448-449.) "It is immaterial" which party initiated discovery; more important is the manner of response. (*Guess?*, *supra*, 79 Cal.App.4th at p. 558.)

During the nearly five months that Fountain Care delayed petitioning to compel arbitration, it filed demurrers to James's complaint and amended complaint, as well as motions to strike parts of James's complaint and amended complaint. It filed numerous briefs in support of its demurrers and motions to strike. Fountain Care also propounded discovery, serving three sets of written discovery requests on James and serving subpoenas requesting Marian's health records. Furthermore, Fountain Care failed to plead as an affirmative defense its purported right to arbitrate. "At a minimum, the failure to plead arbitration as an affirmative defense is an act inconsistent with the later assertion of a right to arbitrate." (*Guess?*, *supra*, 79 Cal.App.4th at p. 558.)

The court properly found Fountain Care took actions inconsistent with an intent to arbitrate. Indeed, other cases have reached the same conclusion regarding

12

similar conduct.  (See, e.g., *Guess?*, *supra*, 79 Cal.App.4th at p. 558 [defendant took steps inconsistent with arbitration by answering the complaint, responding to plaintiff's discovery, participating in depositions, and moving unsuccessfully to stay the action without asserting arbitration right]; *Adolph*, *supra*, 184 Cal.App.4th at p. 1451 [defendant waived arbitration right by filing two demurrers, engaging in discovery, and failing to assert arbitration in case management statement].)

Fountain Care relies on *Groom v. Health Net* (2000) 82 Cal.App.4th 1189 to support its contention that filing multiple demurrers and motions to strike does not equate to substantially invoking the litigation machinery.  As we stated in *Burton*, we decline to follow *Groom*.  (*Burton*, *supra*, 190 Cal.App.4th at p. 948.)  Fountain Care's demurrers sought the dismissal of James's causes of action for elder abuse and negligent hiring and supervision, as well as the dismissal of James's entire amended complaint.

Substantial evidence supports the court's finding Fountain Care acted inconsistently with asserting a right to arbitration.

### 3. *Prejudicing James Through the Delays and Litigation on James's Claims*

"Prejudice typically is found only where the petitioning party's conduct has [(1)] substantially undermined" the """"public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution,"""" or (2) "substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1204.)  Although "courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses" (*id.* at p. 1203), litigation costs are a factor which courts may consider in assessing prejudice (*Sobremonte v. Superior Court*, *supra*, 61 Cal.App.4th at p. 995).  "[T]he critical factor in demonstrating prejudice is whether the party opposing arbitration has

13

been substantially deprived of the advantages of arbitration as a "''speedy and relatively inexpensive'''" means of dispute resolution." (*Burton*, *supra*, 190 Cal.App.4th at p. 948.)

Here, substantial evidence supports the court's finding Fountain Care prejudiced James through the delays and litigation on James's claims. Fountain Care delayed the arbitration process by waiting almost five months before filing its arbitration petition. During that time, Fountain Care propounded discovery and filed demurrers. James was required to expend $160,000 in attorney fees and costs during Fountain Care's delay. The court properly found Fountain Care prejudiced James by delaying the enforcement of its asserted arbitration right as a speedy and inexpensive forum to resolve disputes. (See, e.g., *Guess?*, *supra*, 79 Cal.App.4th at pp. 556, 558 [sufficient evidence of prejudice during delay period of less than four months where defendant answered and responded to discovery, participated in deposition proceedings, and filed unsuccessful stay motion]; *Adolph*, *supra*, 184 Cal.App.4th at p. 1451-1452 [sufficient evidence of prejudice during six-month delay in demanding arbitration where defendant filed two demurrers, accepted and challenged discovery requests, attempted to schedule discovery requests, and failed to assert arbitration in case management statement]; *Lewis*, *supra*, 205 Cal.App.4th at p. 452 [sufficient evidence of prejudice during six-month delay where defendant filed three demurrers and two motions to strike, forced plaintiff to file discovery motions or lose right to discovery due to statutory deadline, and caused plaintiff to incur $45,000 in attorney fees and $1,000 in costs].)

Fountain Care cites *Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th 438 (*Gloster*), for the proposition that a prejudice claim cannot be sufficiently supported when costs incurred from litigation stem from a plaintiff's own efforts. In *Gloster*, the court found "defendants consistently asserted their intention to arbitrate" through communications before litigation was even filed, pleaded arbitration as an affirmative defense, and asserted the right to arbitration in a series of case management statements. (*Gloster*, at p. 449.) The *Gloster* defendants restricted litigation

14

to only responding to plaintiff's discovery requests and attending case management conferences. (*Ibid.*) Consequently, the appellate court concluded "there was no question" the defendants intended to arbitrate (*ibid.*), and therefore, the defendants' actions did not prejudice the plaintiff who was responsible for the majority of litigation (*id*. at p. 450).

*Gloster* does not aid Fountain Care. Unlike *Gloster*, where defendants consistently and unequivocally expressed an intention to arbitrate, Fountain Care's hot and cold tactics of asserting an intention to arbitrate while simultaneously litigating in court frustrated the use of arbitration proceedings as a quick and inexpensive means of dispute resolution. This is true even as to discovery initiated by James. "It is the manner in which [Fountain Care] responded that matters, and it was [Fountain Care's] response that was inconsistent with its present claim of a right to arbitrate." (*Guess?*, *supra*, 79 Cal.App.4th at p. 558.)


DISPOSITION


The order is affirmed. James shall recover costs on appeal.



IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.


15