Filed 7/23/14  Fremont Auto. Dealership v. Kim C1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FREMONT AUTOMOBILE DEALERSHIP, LLC.<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>JANET KIM,<br><br>　　　Defendant and Respondent. | A137266<br><br>(Alameda County<br>Super. Ct. No. HG12647836) |

Appellant Fremont Automobile Dealership, LLC (Fremont Toyota) appeals from an order denying its petition to compel arbitration of a claim for unpaid wages asserted by a former employee, respondent Janet Kim.  The trial court concluded that Fremont Toyota waived its right to enforce an arbitration agreement between the two parties by waiting until after Kim's wage claim had been heard by the Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE)—a hearing that resulted in an award of $108,796.76 in Kim's favor—to seek to enforce the agreement.  We reverse.

**BACKGROUND**

On June 14, 2011, Fremont Toyota hired Kim as the director of its special finance department.  The relationship would prove to be a short one, however, as Kim was terminated from the position a mere four months later.

1

On November 7, three weeks after her termination, Kim filed a claim for unpaid wages with the DLSE. A formal complaint followed on January 3, 2012.[1] In the complaint, Kim alleged Fremont Toyota owed her $96,465.92 in unpaid commissions, plus Labor Code section 203 penalties of $1,049.36 per day.

It is unclear from the record when Fremont Toyota received notice of Kim's complaint. After it did so, however, two events apparently occurred. First, Toyota answered Kim's complaint, denying her allegations and alleging an affirmative defense of unclean hands based on an assertion that Kim improperly reported a customer's credit history to obtain loan financing and overstated book values, causing losses to the dealership. Second, the DLSE attempted to mediate resolution of Kim's claim, to no avail. Other than that, for reasons not evident from the record, eight months passed after the filing of Kim's complaint with apparently no other action.

Finally, on August 15, the DLSE served a notice of hearing, setting Kim's wage claim for a Berman hearing[2] on Monday, September 17.

On Friday, September 14—the court day before the hearing—Fremont Toyota filed in the Alameda County Superior Court a petition to compel arbitration (petition) of Kim's wage claim and to stay the DLSE proceeding. It was based on a "Binding Arbitration Agreement" Kim signed as part of her "new hire" paperwork, pursuant to which she agreed to arbitrate certain employment-related disputes. As relevant here, the arbitration agreement provided:

"I also acknowledge that the Company utilizes a system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company

---

[1] All subsequent dates are in 2012.

[2] As an alternative to an ordinary civil action for unpaid wages, an employee may file a wage claim with the Labor Commissioner pursuant to Labor Code section 98, et seq. This is commonly known as the "Berman" hearing procedure. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1128 (*Sonic-Calabasas II*).)

2

and myself, I and the Company both agree that any claim, dispute, and/or controversy that either party may have against one another (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, as well as all other applicable state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company . . . arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, and Employment Development Department claims) shall be submitted to and determined exclusively by binding arbitration. I understand and agree that nothing in this agreement shall be construed so as to preclude me from filing any administrative charge with, or from participating in any investigation of a charge conducted by, any government agency such as the Department of Fair Employment and Housing and/or the Equal Employment Opportunity Commission; however, after I exhaust such administrative process/investigation, I understand and agree that I must pursue any such claims through this binding arbitration procedure. . . . I agree that the arbitration and this Agreement shall be controlled by the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. Sec 1280 et seq., including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery). . . ."

That same Friday—again, the court day before the Berman hearing—counsel for Fremont Toyota telephoned the office of the deputy labor commissioner presiding over Kim's DLSE claim and requested that the Monday hearing be stayed due to the filing of the petition. The request was denied and counsel was advised that the hearing would proceed as scheduled.

On September 17, the Berman hearing went forward. Fremont Toyota appeared by counsel, who objected to the proceeding due to the pending petition. The deputy labor commissioner noted counsel's objection and, after consulting with DLSE's legal counsel, proceeded with the hearing. Although Fremont Toyota's counsel refused to present a defense, he cross-examined Kim, particularly inquiring as to whether she had overstated book values or submitted fraudulent information to banks. That same day, Fremont Toyota also served the petition on Kim.

Three days after the hearing, Fremont Toyota filed an ex parte application for an order shortening time for the hearing on its petition. It argued it was in immediate danger of losing its right to arbitrate Kim's dispute because the deputy labor commissioner was required to issue a ruling within 15 days of the September 17 Berman hearing—a date that would pass before the first available date for a hearing on the petition. Fremont Toyota therefore requested that its petition be heard no later than October 2 and that the DLSE proceeding be stayed pending the court's ruling on the petition.

The following day, the court heard and denied Fremont Toyota's ex parte request, stating in its order, "Petitioner properly made an application to stay DLSE proceedings in those proceedings and it was denied, so this court is reluctant to revisit that issue. The parties can address the priority of a DLSE finding and an arbitrator's award if, or when, either of those is presented to the court to be reduced to a judgment." Later that day, Fremont Toyota served notice that its petition would be heard on October 16.

On September 26, the deputy labor commissioner issued her "Order, Decision or Award" (ODA), ruling in favor of Kim in the amount of $108,796.76, comprised of $53,862.62 in commissions, $5,120.64 in interest, and $49,813.50 in Labor Code section 203 waiting time penalties. The ODA was served on the parties on September 28. Fremont Toyota timely filed in the Alameda County Superior Court a request for a de novo review of Kim's claim pursuant to Labor Code section 98.2.[3]

---

[3] Fremont Toyota asks that we take judicial notice of certain documents filed in its appeal from the ODA. The unopposed request for judicial notice is granted.

4

On October 2, Kim filed two documents: a response to the petition, in which she asserted as an affirmative defense that Fremont Toyota waived its right to compel arbitration, and an opposition to the petition, in which she argued there were two possible outcomes on the petition, described as follows:

"In accordance with Labor Code § 98.2, [the ODA] will become final and subject to entry as a court judgment unless by Monday, October 15, 2012, Fremont Toyota files a de novo appeal with the superior court, along with an appeal bond or cash surety in the amount of the order, decision or award. If Fremont Toyota files a timely appeal of the order, decision or award, along with the required appeal bond or surety, it is entitled to a de novo hearing on Kim's wage claim.

"The hearing on this petition to compel arbitration is scheduled for October 16, 2012. There are two possible outcomes of this hearing. If Fremont Toyota fails to file a de novo appeal and post the required appeal bond or surety by October 15, 2012, the petition must be denied because the Labor Commissioner's order, decision or award will have become final, and not subject to any sort of review. Alternatively, if Fremont Toyota files a de novo appeal and posts the required appeal bond or surety by October 15, 2012, [Kim] concedes that the arbitration agreement may be enforced to allow for review of the Labor Commissioner's order, decision or award by mean of de novo arbitration . . . ." Notably, Kim did not make a waiver argument in her opposition.

In reply, Fremont Toyota argued that in light of Kim's concession that her claim was subject to the mandatory arbitration provision, the court was obligated to grant the petition. And it contended the ODA was unenforceable, since the filing of the petition had stripped the hearing officer of jurisdiction to proceed with Kim's DLSE claim.

Kim filed a "sur-reply," disputing Fremont Toyota's claim that the hearing officer lacked jurisdiction, and addressing other arguments allegedly raised for the first time on reply. And, once again, Kim did not assert a waiver argument.

Prior to the hearing on the petition, the court issued a tentative ruling granting the petition. The tentative ruling was contested, and the petition came on for hearing on October 16. The court heard brief argument addressing whether Fremont Toyota had

5

timely sought review of the ODA and posted the requisite undertaking, the DLSE's jurisdiction to issue the ODA, and the applicability of the fee shifting provision of Labor Code section 98.2. Not one word was said about waiver. At the conclusion of the brief hearing, the court said it "will go back and reread the arbitration agreement in light of the arguments you made here today, and will get an order out in a number of days." With that the court took the matter under submission.

By order dated November 2, the court denied Fremont Toyota's petition, reasoning as follows:

"The law is in flux regarding how an arbitration agreement interacts with the statutory right to a DLSE hearing under Labor Code [section] 98. The decision of the California Supreme Court on this issue in *Sonic Calabasas A, Inc. v. Moreno* (2011) 51 Cal.4th 659, was recently vacated by the United States Supreme Court for further consideration in light of *AT & T Mobility LLC v. Concepcion* (2011) __ U.S. __, 131 S.Ct. 1740. (See *Sonic Calabasas A, Inc. v. Moreno*, cert. granted (2011) __ U.S. __, 132 S.Ct. 496.) On the facts of this case, the court need not, however, address these issues in this case at this time.

"The arbitration agreement is governed by the Federal Arbitration Agreement [*sic*]. (Petition, Exh. A.) Therefore, the court applies federal law in determining whether Fremont Auto Dealership has lost its right to arbitrate through delay or participation in the DLSE proceedings. (*Aviation Data, Inc. v. American Express Travel Related Services Co., Inc.* (2007) 152 Cal.App.4th 1522, 1534–1535.) Although this analysis is commonly referred to as 'waiver,' it is distinctly different from a common law waiver analysis. (*Saint Agnes Medical Center v. PacifiCare of California* (2003), 31 Cal.4th 1187, 1195 fn. 4; *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 315.)

"Federal and California law on this topic are 'in accord' in this area with both placing a heavy burden on the party seeking to avoid arbitration and both evaluating the same factors. (*Saint Agnes Medical*, 31 Cal.4th 1187, 1194–1196; *Aviation Data*, 152 Cal.App.46th [*sic*] at 1537–1338 [*sic*].) California courts have found that delays of

6

10 months in seeking arbitration have resulted in the loss of the right to arbitrate. (*Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 17.)

"Although Fremont Auto Dealership's delay was 9 months rather that [*sic*] the 10 months of delay in the cases referenced in *Zamora*, the court finds that on the facts of this case Fremont Auto Dealership has lost its right to compel contractual arbitration based on the following facts: (1) Fremont Auto Dealership was served with a notice of respondent's DLSE claim in January 2012, nine months before it moved to compel arbitration; (2) Fremont Auto Dealership was well into its preparation for the DLSE matter before it notified the DLSE or Ms. Kim of an intent to arbitrate; (3) Fremont Auto Dealership delayed filing a petition to compel arbitration for nine months after it received notice of the respondent's DLSE claim; (4) DLSE [*sic*] did not move to compel arbitration until after it had participated in the DLSE hearing by questioning respondent Kim; and (5) Fremont Auto Dealership attended the DLSE hearing, saw how the DLSE and Ms. Kim presented Ms. Kim's case, and cross-examined Ms. Kim, thereby taking advantage of the DLSE procedure."

On December 7, 2012, Fremont Toyota filed a timely appeal.

### DISCUSSION

The enforcement of a contractual arbitration provision is governed by Code of Civil Procedure section 1281.2, which provides, as relevant here: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner. . . ."

Our Supreme Court discussed the concept of waiver in the context of arbitration in *Saint Agnes Medical Center v. PacifiCare of California, supra,* 31 Cal.4th 1187 (*Saint Agnes*), beginning its analysis with confirmation of the rule that "Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by substantial evidence, is binding on the appellate court." (*Id.* at p. 1196.) The court noted,

7

however, that when " 'the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' " (*Ibid.*; see also *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1202.) More recently, cases have confirmed that we " ' "may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver. . . ." ' " (*Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 12; accord, *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443; *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1449–1450.)

In *Saint Agnes*, the Supreme Court considered whether the party seeking to compel arbitration had waived its right to do so. Relying on the strong public policy favoring arbitration and the principle that waiver of the right to arbitration should not be lightly inferred (*Saint Agnes, supra,* 31 Cal.4th at p. 1195), the court held that the only conclusion to be drawn from the undisputed facts before it was that there had been no waiver. (*Id.* at p. 1206.) The facts before us are likewise undisputed, and we, too, conclude that the record as a matter of law compels a finding that Fremont Toyota did not waive its right to arbitrate Kim's wage claim.

The party opposing a petition to compel arbitration bears the burden of proving the facts supporting any defense, such as waiver, by a preponderance of the evidence. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) We must " ' "closely scrutinize any claims of waiver [citations] and ' "indulge every intendment to give effect to [arbitration] proceedings." ' " (*Service Employees Internat. Union, Local 1021 v. San Joaquin County* (2011) 202 Cal.App.4th 449, 459.) "[W]aivers are not to be lightly inferred and the party seeking to establish a wavier bears a heavy burden of proof." (*Saint Agnes, supra,* 31 Cal.4th at p. 1195.)

It is generally recognized that there are six factors to be considered when assessing a waiver claim. (*Saint Agnes, supra,* 31 Cal.4th at p. 1196; *Zamora v. Lehman, supra,* 186 Cal.App.4th at p. 13; *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992; *Peterson v. Shearson/American Exp., Inc.* (10th Cir. 1988) 849 F.2d 464, 467–468.) Five

of the factors are irrelevant to the issues before us. The sixth is dispositive: whether Kim was " 'affected, misled, or prejudiced' " by Fremont Toyota's delay in filing its petition. (*Saint Agnes, supra,* 31 Cal.4th at p. 1196; *Sobremonte v. Superior Court, supra,* 61 Cal.App.4th at p. 992.)

As the *Saint Agnes* court noted, under federal law, the presence or absence of prejudice is determinative of the waiver issue, and under California law, "prejudice also is critical in waiver determinations . . . ." (*Saint Agnes, supra,* 31 Cal.4th at p. 1203.) It explained: "[C]ourts assess prejudice with the recognition that California's arbitration statutes reflect ' "a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution" ' and are intended ' "to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." ' [Citation.] Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration. [¶] For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence [citation]." (*Saint Agnes, supra,* 31 Cal.4th at p. 1204.) None of these factors was present here.

As noted, Kim did not even assert a waiver claim below, and thus did not previously identify how she was purportedly prejudiced by Fremont Toyota's delay. On appeal, however, she claims prejudice because, "[r]ather than seek an expedient resolution, [Fremont Toyota] kept [her] in the dark until the day of the DLSE hearing, then appeared at that hearing, objected to it, observed [her] entire trial presentation, cross-examined [her], and thereafter tried to thwart the DLSE award—which amounted to an ambush as it all was done without permitting [her] any discovery or even a glimpse of any of the [Fremont Toyota's] witnesses." She also submits that by sitting "through the

9

equivalent of a trial and cross-examin[ing] [her] without revealing its witnesses or evidence . . . [Toyota Fremont] gain[ed] much more insight than it could have via discovery." This argument is fatally flawed.

Pursuant to Labor Code section 98.2, subdivision (a)—and as Kim acknowledged in her opposition to the petition—Fremont Toyota was entitled to a de novo review by the trial court of Kim's claim, which right it secured by timely appealing from the ODA and posting an undertaking. And, prior to that review, Fremont Toyota was permitted to attend the hearing, observe Kim's presentation, cross-examine her, and forego the presentation of a defense. Thus, even in the trial court review—which Kim urges is the procedure applicable here—Fremont Toyota would have had the very same "advantages" about which Kim complains. In other words, Fremont Toyota did not gain any advantage for the arbitration that it would not have had in the trial court's de novo review.

Nor do the five "facts" cited by the trial court establish waiver, as those facts are largely without support in the record. We do not disagree that Fremont Toyota delayed in seeking to enforce the arbitration provision (facts 1 and 3), but such delay was arguably not unreasonable in light of the state of the law at the time. In February 2011—before Kim's January 2012 DLSE complaint—the California Supreme Court held in *Sonic-Calabasas A, Inc. v. Moreno, supra,* 51 Cal.4th 659 (*Sonic-Calabasas I*), that an employee's statutory right to invoke the Berman process was an unwaivable right that the employee could not be compelled to relinquish as a condition of employment. In October 2011, however, the United States Supreme Court vacated *Sonic-Calabasas I*, remanding it for further consideration in light of *AT&T Mobility LLC v. Concepcion, supra,* 131 S.Ct. 1740, which found a California arbitration rule preempted by the Federal Arbitration Act (FAA) because it interfered with the fundamental objectives of the FAA, namely, facilitating an informal, streamlined proceeding. (*Sonic-Calabasas A, Inc. v. Moreno* (2011) 132 S.Ct. 496.) On October 17, 2013—long after the Berman hearing here—the California Supreme Court issued *Sonic-Calabasas II, supra,* 57 Cal.4th 1109, holding that the FAA preempted the categorical imposition of a Berman hearing requirement because it would create significant delays in the commencement of

10

arbitration, in contravention of the FAA's objectives. Kim initiated her DLSE claim after *Sonic-Calabasas I* was vacated but before *Sonic-Calabasas II* was issued—a two-year period during which it was unclear whether an arbitration agreement could preempt an employee's right to a Berman hearing. In light of this, Fremont Toyota could reasonably have concluded that it would have been futile to seek arbitration of Kim's wage claim.

As to the remaining facts cited by the court, it was purely speculative that Toyota Fremont "was well into its preparation for the DLSE matter before it notified the DLSE or Ms. Kim of an intent to arbitrate" (fact 2). Fremont Toyota did not present a defense at the Berman hearing, so how could the court know what kind of preparation it had undertaken? Fact 4—that Fremont Toyota filed its petition after it participated in the DLSE hearing—is simply incorrect, as the petition was filed on September 14 and the hearing was held on September 17. And fact 5, which concludes that Fremont Toyota took advantage of the DLSE procedure by attending the hearing and cross-examining Kim, ignores that it did so under protest and after unsuccessfully requesting a stay of the hearing in light of the pending petition.

In addition to finding no evidentiary support for waiver, we offer these final observations. In her opposition to the petition, Kim represented that if Fremont Toyota sought a de novo appeal of the DLSE order and posted the required appeal bond or surety—both of which it did—then "the arbitration agreement may be enforced to allow for review of the Labor Commissioner's order, decision or award by means of de novo arbitration . . . ." In other words, she impliedly conceded the existence of a valid arbitration agreement, and expressly conceded that it would govern review of the ODA. Given these concessions below, we are hard pressed to understand how Kim can now argue that Fremont Toyota had in fact waived its right to enforce the arbitration agreement.

We are likewise flummoxed as to how the trial court could conclude Kim carried her "heavy burden" of proving waiver (*Saint Agnes, supra,* 31 Cal.4th at p. 1195) when she neither argued waiver in her opposition or surreply nor raised it at the hearing. Preserving the affirmative defense of waiver by asserting it in her response to the

11

petition, which she did, is a far cry from affirmatively carrying a "heavy burden of proof." And Kim cites no authority—and we are aware of none—supporting the proposition that the court can sua sponte raise a nonjurisdictional bar to a petition to compel arbitration.

Lastly, Kim also argues that, waiver aside, her claim was not subject to arbitration by the express terms of the arbitration agreement. In claimed support, she quotes a sentence in the arbitration agreement providing that "nothing in [it] shall be construed so as to preclude [Kim] from filing any administrative charge with . . . any governmental agency." As Fremont Toyota accurately points out, however, when read in context, the quoted sentence does not exclude Berman hearings from the arbitration agreement. The complete passage actually states: "I understand and agree that nothing in this agreement shall be construed so as to preclude me from filing any administrative charge with, or from participating in any investigation of any charge conducted by any government agency such as the Department of Fair Employment and Housing and/or the Equal Employment Opportunity Commission; however, after I exhaust such administrative process/investigation, I understand and agree that I must pursue any such claims through this binding arbitration procedure." We are persuaded by Fremont Toyota's thorough analysis of the distinction between a wage claim, such as that at issue here, and an administrative charge, such as an accusation of discrimination or harassment that initiates an investigation by the Department of Fair Employment and Housing or the federal Equal Employment Opportunity Commission. By the terms of the arbitration agreement at issue here, the former is subject to arbitration; the latter, at least initially, is not.

12

## DISPOSITION

The trial court's order denying Fremont Toyota's petition to compel arbitration is reversed.

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Brick, J.[*]

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.