Filed 9/25/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRITNEE CAMPBELL, | |
| Plaintiff and Respondent, | G062886 |
| v. | (Super. Ct. No. 30-2022-01261811) |
| SUNSHINE BEHAVIORAL HEALTH, LLC, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Lon F. Hurwitz, Judge. Affirmed.

Fisher & Phillips, Spencer Waldron and Lyle Chan for Defendant and Appellant.

Protection Law Group, Heather Davis, Amir Nayebdadash and Carlos Jimenez for Plaintiff and Respondent.

\* \* \*

Plaintiff Britnee Campbell, a former employee of defendant Sunshine Behavioral Health, LLC (Sunshine), filed the instant lawsuit against Sunshine for wage and hour violations as a putative class action on May 23, 2022. Sunshine proceeded with litigation, eventually entering into a joint stipulation to, among other things, participate in mediation. In November, Sunshine, allegedly for the first time, discovered Campbell had signed an arbitration agreement. Weeks later, Sunshine represented to the court it intended to proceed with mediation. The court signed the mediation order in March 2023. At that point, for the first time, Sunshine stated it would not participate in mediation but instead intended to file a petition to compel arbitration. It did not do so until May 3.

The court determined Sunshine had waived arbitration, and we agree. We conclude there was clear and convincing evidence to support the court's finding that Sunshine's conduct waived any right to arbitration.[1] We therefore affirm the order.

FACTS

Sunshine employed Campbell as an hourly, nonexempt worker from approximately October 2018 to March 2019. Sunshine contends that when Campbell began her employment, she signed an arbitration agreement that included a class action waiver.

On May 23, 2022, Campbell, as the lead plaintiff in a putative class action, filed the instant complaint. The complaint alleged a single cause of action for violations of Business and Professions Code section 17200, et seq., based on violations of employment law. Among other things, the

---

[1] We offer no opinion as to whether the arbitration agreement Sunshine alleged Campbell signed was valid or enforceable. This issue was never reached by the trial court.

2

complaint alleged employees had not been paid proper overtime compensation, had been required to work through meal and rest breaks without compensation, had not been paid minimum wage, and had not been paid in a timely manner.

Sunshine filed an answer on August 3, 2022. The answer included an affirmative defense that "one or more of the putative class members" signed an arbitration agreement that precluded them from participation. Later that month, Campbell served certain discovery requests on Sunshine.

According to Campbell's counsel, prior to the initial status conference, which was set for September 15, 2022, defense counsel proposed the idea of early mediation to explore settling the case. Campbell's counsel represents that in the joint status conference statement, Sunshine represented to the court that "'formal discovery is premature at this time, as Defendant believes that the parties would benefit from early informal settlement discussions, including attending private mediation.'" Sunshine also stated: "'Defendant is amenable to private mediation and a stay of the case pending the completion of mediation. Participation in private mediation would include an informal exchange of data and information sufficient to prepare for settlement negotiations.'"[2] The status conference was continued to December 14.

The parties agreed to mediate the case. On October 27, 2022, they entered into a detailed agreement entitled "Joint Stipulation Regarding Discovery and Mediation" (the joint stipulation). The joint stipulation stated, among other things, that the parties agreed to participate in private

---

[2] It is unclear why this document is not part of the record, but it is not. This quotation is from a sworn declaration by Campbell's counsel.

3

mediation on April 18, 2023, and to stay discovery. Sunshine agreed to produce documents and data prior to the mediation and to refrain from certain conduct with regard to potential class members. The parties also agreed that if mediation was unsuccessful, the parties had met and conferred on an appropriate notice to the class pursuant to *Belaire-West Landscaping, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554 (a *Belaire-West* notice), which would be mailed out by an agreed-upon company seven days after the failed mediation. According to Campbell's attorney, reaching the joint stipulation required "substantial negotiations," including "weeks" spent on the *Belaire-West* notice.

On November 22, 2022, Sunshine asserted it located, for the first time, an arbitration agreement in Campbell's personnel file. No explanation was offered as to why this document was not or could not have been located earlier. Sunshine did not inform Campbell of this discovery until December 7, 2022, when preparing the status conference report for the court.

The joint status conference statement reflected the parties' agreement, as set forth in the joint stipulation, to mediate the case. The parties jointly requested a continuance of the status conference to a date after mediation. The court set a postmediation status conference for early May.

On March 24, 2023, the court signed the joint stipulation, turning it into an order as the parties had requested. On the same date, Sunshine informed Campbell that it would not be participating in mediation (and thereby complying with the court's order), but would instead move to compel arbitration. In accordance with the provisions of the joint stipulation, Campbell re-served her discovery requests on Sunshine.

Months later, on May 3, 2023, Sunshine filed its motion to compel arbitration. The motion was not particularly complex or voluminous.

4

At the May 10 status conference, the court noted the failure to participate in mediation was "a violation by defendant of the Court's stipulation and order which was filed on [March 24, 2023]." On the same date, Campbell filed motions to compel responses to her written discovery requests and document production request.

The motion to compel arbitration was briefed. Sunshine also sent responses to the discovery requests that were the subject of Campbell's May motion to compel. The responses included in excess of two hundred documents responsive to the document production request.

The court held a hearing on the motion to compel arbitration on July 14, 2023. The court, after discussion, found that Sunshine, "under an analysis of the *St. Agnes* factors, . . . waived its right to compel Plaintiff's claims to arbitration."[3] The court noted: "In the Joint Status Conference Statement filed on December 7, 2022, Defendant stated that in preparation for mediation, it had 'recently discovered' an arbitration agreement signed by Plaintiff. Defendant went on to state that it believed 'that the existence of Plaintiff's arbitration agreement will materially affect whether Plaintiff can proceed on a class-wide basis on the claims asserted in this lawsuit.' [Citation.] Nevertheless, the Joint Statement concluded with the parties' 'joint position' requesting a continuance of 'the Further Status Conference scheduled for December 14, 2022, to a date that is after the mediation that is convenient for the Court.'"

---

[3] At the time the case was before the trial court, *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 (*St. Agnes*) was the leading authority on this issue. After the conclusion of briefing, the California Supreme Court decided *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 582, fn. 4 (*Quach*). *Quach* specifically overruled *St. Agnes*, as we shall discuss in more detail *post.*

The court's order continued: "Although Defendant purportedly 'discovered' an enforceable arbitration agreement on or around December 7, 2022, the Joint Stipulation and Order Regarding Discovery and Mediation was signed by the Court and filed on March 24, 2023. [Citation.] But at no time between October 26, 2022, when Defendant originally signed the proposed Joint Stipulation, and March 24, 2023, when the Court signed the Order, did Defendant inform the Court that it no longer intended to attend mediation."

After reviewing the terms of the joint stipulation, including the agreement to mediate, the court continued: "Notably, the Joint Stipulation and Order did not say anything about Defendant having the option to decline to attend mediation and pursue a motion to compel arbitration instead. But on the same day the Joint Stipulation and Order was signed and filed by the Court, Defendant purportedly informed Plaintiff that it would not participate in the April 2023 mediation, but rather would move to compel arbitration."

The court went on to state: "Between December 7, 2022, when Defendant first represented that it had purportedly discovered an enforceable arbitration agreement, and March 24, 2023, when the Joint Stipulation and Order was signed and filed by the Court, Defendant ostensibly did nothing to inform the Court or Plaintiff that it intended to pursue arbitration instead of mediation. Instead, for more than 100 days, Defendant allowed this Court and Plaintiff to believe that it intended to proceed in compliance with the proposed Joint Stipulation as filed on October 27, 2022. [Citation.] During those 100+ days, Defendant had every opportunity to inform the Court and Plaintiff that it did not want to proceed under the terms of the Joint Stipulation and mediate this dispute. But Defendant did not do so. Instead, Defendant decided to violate the Joint Stipulation and Order and wait until

6

three weeks before the scheduled mediation to inform Plaintiff that it would not participate in the proceeding."

The court's order continued: "Moreover, Defendant did not move to compel arbitration until May 3, 2023—40 days after it informed Plaintiff that it did not intend to attend mediation. Defendant also did not inform the Court until the May 10, 2023 Status Conference that it had decided not to attend mediation."

The order further stated: "Although there is a presumption against waiver, Defendant's actions here are troubling. As noted above, Defendant knew before December 7, 2022, that there might be an enforceable arbitration agreement. Yet, in the December 7, 2022 Joint Status Conference Statement, it did not definitively state it would seek to compel arbitration. Instead, Defendant gave the impression that it intended to proceed with the agreed upon mediation. Defendant then sat on its right to compel arbitration for more than six months, and allowed this Court to sign the Joint Stipulation and Order on March 24, 2023, thus entering into the record the parties' intent to mediate and their extensive agreement based on that intent. In so doing, Defendant put itself in the position of violating an Order of this Court, and thus setting in motion the operation of various provisions of the Order, such as Plaintiff's now-pending motion to compel discovery responses. Defendant had adequate time to prevent the execution of the Joint Stipulation and Order, but failed to do so. Defendant should not now be allowed, at the 11th hour, to compel arbitration as an 'alternative' to what is a Court Order."

Accordingly, the court concluded Sunshine had waived any right to compel arbitration and denied its motion. Sunshine now appeals.

7

## DISCUSSION

### I.

### *QUACH* AND *ST. AGNES*

The California Supreme Court decided *Quach* on July 25, 2024, after the close of briefing in this case. Under *St. Agnes*, California courts had applied an "arbitration-specific" requirement for the party resisting arbitration to demonstrate that the other party's conduct had not only met the requirements for waiver, but also had caused prejudice. (*Quach*, *supra*, 16 Cal.5th at pp. 571–572.) In the United States Supreme Court decision in *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, the court held that in cases where the Federal Arbitration Act (FAA) applies, federal policy "is about treating arbitration contracts like all others, not about fostering arbitration." (*Morgan*, at pp. 412, 418.) The holding in *Quach* made clear that the same policy applies to cases under the California Arbitration Act (CAA). "Accordingly, regardless of whether the procedural requirements of the FAA or the CAA apply in these proceedings, our determination of whether Commerce Club has lost its right to compel arbitration as a result of its litigation-related conduct is governed by generally applicable state law contract principles. As we will explain, these principles do not require a showing of prejudice to establish waiver." (*Quach*, at p. 572.)

*St. Agnes, supra,* 31 Cal.4th at page 1196, had held there was no single test for determining a waiver of the right to arbitrate, but listed factors for the court to consider: ""(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial

8

date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party.""""

After discussing these factors, the court in *St. Agnes* had also held that the opposing party must show prejudice. As the court in *Quach* put it, "We characterized ""[t]he presence or absence of prejudice"" resulting from the litigation of an arbitrable dispute as ""the determinative issue under federal law."""" (*Quach*, *supra*, 16 Cal.5th at p. 573.)

The court in *Quach* further noted that "[t]he United States Supreme Court's decision in *Morgan*, *supra*, 596 U.S. 411 rendered the *St. Agnes* framework inapplicable in cases governed by the FAA's procedural rules." (*Quach*, *supra*, 16 Cal.5th at p. 575.) The court in *Morgan* specifically rejected an arbitration-specific prejudice requirement. "[T]he FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." (*Morgan*, at p. 418.)

After a careful analysis of the CAA, the court found there is no basis for an arbitration-specific prejudice rule under California law. (*Quach*, *supra*, 16 Cal.5th at p. 576.) "It thus appears that the stringent standards to which we have held a party seeking to establish waiver—and, in particular, the prejudice requirement—are based on a now-abrogated federal rule that we had adopted in order to conform state procedure to federal procedure. [Citation.] As we have observed, California courts have, for decades, been applying the arbitration-specific prejudice requirement regardless of whether the case was governed by the CAA or the FAA. [Citation.] California's

9

arbitration-specific prejudice requirement shares a history with the federal prejudice requirement at issue in *Morgan*; both originated in federal circuit court precedent reflecting the faulty understanding of the federal policy favoring arbitration that *Morgan* corrected. After *Morgan*, the desire for procedural uniformity weighs in favor of abrogating California's arbitration-specific prejudice requirement and applying the same principles in determining whether a party has lost the right to compel arbitration as would apply under generally applicable contract law. [Citation.] Because the state law arbitration-specific prejudice requirement finds no support in statutory language or legislative history, we now abrogate it." (*Id.* at pp. 581–582.)

The court then turned to the question of how to analyze a waiver issue without the *St. Agnes* prejudice requirement. "In ruling on a motion to compel arbitration, a court should separately evaluate each generally applicable state contract law defense raised by the party opposing arbitration. It should not lump distinct legal defenses into a catch-all category called 'waiver.'" (*Quach*, *supra*, 16 Cal.5th at pp. 583–584.) "Among the factors we identified as relevant to a "waiver" determination in *St. Agnes* are some that are relevant to other defenses, such as forfeiture, estoppel, laches or timeliness, but not to waiver. [Citation.] . . . [Citations.] Instead, a court should be careful to consider only those factors that are relevant to the specific state law defense the party resisting arbitration has raised." (*Id.* at p. 584.)

As in *Quach*, the defense raised by Campbell was waiver. (See *Quach*, *supra*, 16 Cal.5th at p. 584.) "The waiver inquiry is exclusively focused on the waiving party's words or conduct; neither the effect of that conduct on the party seeking to avoid enforcement of the contractual right nor that party's subjective evaluation of the waiving party's intent is

10

relevant. [Citations.] This distinguishes waiver from the related defense of estoppel, 'which generally requires a showing that a party's words or acts have induced detrimental reliance by the opposing party.' [Citations.] To establish waiver, there is no requirement that the party opposing enforcement of the contractual right demonstrate prejudice or otherwise show harm resulting from the waiving party's conduct." (*Id.* at p. 585, fn. omitted.)

II.

STANDARD OF REVIEW

Sunshine argues the appropriate standard of review is de novo because the key question here is whether the trial court properly applied the appropriate legal standard to undisputed facts. Campbell contends there are disputed facts, including: whether Sunshine misled her regarding its intent to mediate on a class-wide basis; whether Sunshine was silent about the existence of the arbitration agreement long after its purported discovery of the document; the extent of the litigation machinery invoked in this case; and whether she suffered prejudice. She argues the appropriate test is substantial evidence.

Ordinarily, because some facts are disputed and the critical facts permit conflicting inferences as to whether Sunshine waived any right to arbitrate, we would review for substantial evidence. (See *Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 963.) But instead we follow the Supreme Court's lead in *Quach.* "In ruling on Commerce Club's motion to compel arbitration, the trial court did not have the benefit of *Morgan* or of our decision today, so in considering Quach's waiver defense, it did not apply the generally applicable law of waiver. We do so now, reviewing de novo the undisputed record of the trial court proceedings and asking whether Quach has established by clear and convincing evidence that Commerce Club knew

11

of its contractual right to compel arbitration and intentionally relinquished or abandoned that right." (*Quach*, *supra*, 16 Cal.5th at p. 585.)

III.

SUNSHINE WAIVED ANY RIGHT TO ARBITRATION

We briefly review the facts in *Quach, supra,* 16 Cal.5th at pp. 570–571. Quach had worked for California Commerce Club (Commerce Club), a casino, for almost 30 years when his employment was terminated. His complaint alleged wrongful termination, age discrimination, retaliation, and harassment. Before Quach filed his complaint, Commerce Club gave him the signature page of a form arbitration he had allegedly signed in 2015, which provided for binding arbitration of employment-related disputes. (*Ibid.*)

Commerce Club did not immediately file a motion to compel arbitration, instead asserting the right to arbitrate as an affirmative defense in its answer. Commerce Club then propounded and answered discovery. In the form it completed prior to the first case management conference, it requested a jury trial, did not check the box indicating it was open to participating in private arbitration, and did not list a motion to compel arbitration in the space provided for listing anticipated motions. It indicated only that it intended to file a dispositive motion. At the case management conference, a trial date was set, and Commerce Club continued to participate in discovery, at one point providing a copy of the arbitration agreement's signature page to Quach. Thirteen months after Quach filed his lawsuit, Commerce Club filed a motion to compel arbitration, asserting it has "just located a complete copy of Quach's arbitration agreement." (*Quach, supra,* 16 Cal.5th at p. 571.)

The California Supreme Court found these facts constituted clear and convincing evidence of waiver, "despite the asserted failure . . . to find a

12

complete copy of Quach's arbitration agreement sooner. In a declaration Commerce Club submitted in support of its motion to compel arbitration, its director of human resources attested that in 2015 — during Quach's employment — Commerce Club required all employees to sign form agreements providing for binding arbitration of employment-related disputes. Before Quach filed suit, Commerce Club provided him the signature page of his arbitration agreement, signed in 2015. And in its answer to Quach's complaint, Commerce Club asserted that Quach's arbitration agreement barred his suit and that he should be compelled to arbitrate. Based on these undisputed facts, we conclude it is 'highly probable' that Commerce Club knew of its right to compel arbitration." (*Quach, supra,* 16 Cal.5th at p. 586.)

The same is true here. Like the trial court, we do not unquestioningly accept Sunshine's representation that it discovered the arbitration agreement for the first time on November 22, 2022. The trial court was highly skeptical, using quotations around the word "'discovered'" at several points in the minute order denying the motion to compel. (See *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1452 ["Although the trial court made no express finding of bad faith, the tone of its ruling is suggestive of such a finding and, had it been made, sufficient evidence would have supported the finding"].)

The trial court's skepticism was warranted.[4] According to Sunshine's own version of events, on November 22, 2022, Campbell's "personnel file had been located, and . . . it contained the Arbitration Agreement." While this implies that the entire personnel file had just been located, the declaration of Traci Gray, attached to the motion to compel arbitration, does not state this. Gray, a human resources generalist for Sunshine, stated that it was "standard practice to maintain copies of employee arbitration agreements in each employee's respective personnel file. Personnel files are maintained in physical files, which are stored in locked drawers located in my office. Those personnel files are also digitally imaged and stored on the computer located in my office." Gray had reviewed Campbell's file, which she stated included an arbitration agreement.

A declaration by a former human resources specialist, Lisa Endo, is similar. She states Sunshine's "common practice to provide all new hires with a copy of the arbitration agreement and other personnel documents at the time of hire." Based on her review of Campbell's file, "I can attest to the fact that Plaintiffs personnel file includes a document titled 'Employee Handbook and Acknowledgment' which operates as [Sunshine]'s arbitration agreement."

Nothing in Gray or Endo's declarations stated that Campbell's personnel file or the arbitration agreement allegedly contained therein had

---

[4] In its opening brief, Sunshine states: "Appellant was unaware of the existence of the Arbitration Agreement. It was not until further internal investigation of Ms. Campbell's claims was conducted that additional records were discovered that included Ms. Campbell's agreement to arbitrate her claims on an individual basis." None of these factual claims are supported by citations to the record; indeed, they flatly contradict the record in terms of Sunshine's stated document storage procedures.

ever been missing or inaccessible. Indeed, nothing Gray or Endo said sheds light on the six-month delay between the beginning of this litigation and Sunshine's "discovery" of the arbitration agreement.

The lack of any admissible evidence to the contrary strongly supports the finding that Campbell's personnel file, and the arbitration agreement included in it, had not been suddenly discovered in November 2022, but had been available to Sunshine prior to that date. Sunshine's lack of any explanation for the alleged belated discovery is telling on its own, but Gray's detailed testimony as to how and where the files were maintained can only support two possible conclusions—either an intentional and willful decision to withhold the arbitration agreement, or a complete lack of diligence amounting to bad faith in its review of Campbell's personnel file.

We conclude it is "'highly probable'" that Sunshine knew of its right to attempt to compel arbitration. (See *Quach, supra,* 16 Cal.5th at p. 586.) Thus, Sunshine's delay in asserting any right to arbitration was not from its alleged discovery in November 2022 until it finally filed its motion to compel in May 2023—it was from the outset of the case.

With respect to the conduct demonstrating waiver, the court in *Quach* found: "The record of Commerce Club's words and conduct also demonstrates by clear and convincing evidence its intentional abandonment of the right to arbitrate. Indeed, on this record, Commerce Club's position, if accepted, would surely create undue delay and gamesmanship going forward. Rather than moving to compel arbitration at the outset of the case, Commerce Club answered the complaint and propounded discovery requests, suggesting it did not intend to seek arbitration. Although Commerce Club asserted in its answer that Quach should be compelled to arbitrate, its counsel did not otherwise raise the issue with Quach's counsel or with the

15

court. Instead, it affirmatively indicated its preference for a jury trial and actively pursued discovery. On Commerce Club's initial case management conference statement, filed about three months after Quach filed his complaint, Commerce Club requested a jury trial, left the check box for indicating it was 'willing to participate' in arbitration blank, and represented that the only motion it intended to file was a 'dispositive motion.' After the case management conference, Commerce Club posted jury fees. In the following months, despite the disruptions caused by the COVID-19 pandemic, Commerce Club actively engaged in discovery, taking Quach's deposition for a full day and corresponding with Quach's counsel about discovery disputes. It was not until 13 months after Quach filed his complaint that Commerce Club first sought to enforce its right to compel arbitration. This evidence of Commerce Club's words and conduct shows that Commerce Club chose not to exercise its right to compel arbitration and to instead defend itself against Quach's claims in court." (*Quach, supra,* 16 Cal.5th at pp. 586–587.)

The facts are not identical here, but the conclusions we can draw from them are. In *Quach*, the defendants participated in more discovery. But here we have the entire mediation debacle, followed by a court order violated by Sunshine. "The [p]arties engaged in substantial negotiations in order to prepare the matter for mediation, including deciding on a mediator and negotiating the terms of the verbose and comprehensive Joint Stipulation & Order." Even after Sunshine purportedly learned of the arbitration agreement for the first time in November, it proceeded with the joint stipulation. Sunshine also failed to immediately disclose the arbitration agreement, waiting weeks to do so.

An additional fact that weighs in favor of finding that Sunshine intentionally waived the right to arbitrate is the prohibition on class actions

16

in its arbitration agreement. Even if they had a plausible argument that they could not locate an arbitration agreement for Campbell, surely, according to the declarations of their human resources specialists, they had in their possession signed arbitration agreements for most, if not all, of the putative class members. Yet the stipulation Sunshine agreed to was on a classwide basis, not only as to Campbell's claim. There is no plausible reason to agree to mediate on a classwide basis if Sunshine intended to pursue the right to arbitrate.

There is no rational explanation for stipulating to an order for classwide mediation, waiting until the court signed the order, and then (and only then), just before the mediation was scheduled, informing the other party that it intended to ignore the terms of the order. Sunshine never went back to court to attempt to dissolve the order, nor did it promptly file a motion to compel arbitration. Instead, it waited months, until May 2023, to finally seek an order compelling arbitration.[5]

"It is well established that a four-to six-month delay in enforcing the right to arbitrate may result in a finding of waiver if the party acted inconsistently with the intent to arbitrate during that window." (*Semprini v. Wedbush Securities Inc.* (2024) 101 Cal.App.5th 518, 527.) Prior to November, Sunshine behaved as if it intended to litigate the case, engaging in negotiations over the joint stipulation and representing to the court that it intended to mediate. After November, Sunshine presented the joint stipulation to the court, and until March 2023, behaved as if it intended to

---

[5] It is unclear from *Quach* whether an additional factor discussed in *St. Agnes*, bad faith or wilful misconduct, survives as a factor to be considered. (*St. Agnes, supra*, 31 Cal.4th at p. 1196.) If it does, it is yet another reason to conclude that Sunshine waived any right to arbitration. Even without it, there is clear and convincing evidence to establish waiver.

proceed with mediation and to follow the court's order. This, too, was inconsistent with its claimed right to arbitrate, as was its later participation in discovery.

"If one is to take seriously the view that arbitration is freely-chosen, consensual, and tailored to the parties' desires, then parties wishing to arbitrate disputes should be required to invoke their rights with some measure of good faith. The alternative is to encourage parties to lull their opponents into believing that a dispute will be litigated, while they wait for an opportune moment to spring the trap door of arbitration." (*Ontiveros v. Zamora* (E.D.Cal. Feb. 14, 2013, No. CIV. S-08-567 LKK/DAD) 2013 WL 593403, at p. *11, fn. omitted.)

The "evidence of Commerce Club's words and conduct shows that Commerce Club chose not to exercise its right to compel arbitration and to instead defend itself against Quach's claims in court." (*Quach, supra,* 16 Cal. 5th at p. 587.) The same is true here. Accordingly, we find that Sunshine has waived its right to arbitrate the dispute.

DISPOSITION

The order is affirmed. Campbell is entitled to her costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


DELANEY, J.

18